DLH, INC., DOING BUSINESS AS COACHES SPORTS BAR & GRILL, APPELLANT, V. NEBRASKA LIQUOR CONTROL COMMISSION ET AL., APPELLEES.

665 N.W.2d 629

Filed July 18, 2003. No. S-02-033.

K.C. Engdahl, of Raynor, Rensch & Pfeiffer, for appellant.

Don Stenberg, Attorney General, and Hobert B. Rupe for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

The Nebraska Liquor Control Commission (Commission) suspended the liquor license of DLH, Inc., after an administrative hearing. The Commission found that DLH allowed a "disturbance" in or about the licensed premises in violation of 237 Neb. Admin. Code, ch. 6, § 019.01F1 (1994). The district court affirmed the Commission's order, and DLH appealed. We removed the case to this court's docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## BACKGROUND

DLH is a Nebraska corporation doing business as Coaches Sports Bar & Grill. In June 2000, DLH; Duane Hartman Investments, Inc.; and DTR, Inc., doing business as Cheetah's, (Cheetah's) entered into a contract whereby Cheetah's would provide "adult entertainment performers" to its portion of the premises. Cheetah's is a leased property separate but adjacent to Coaches Sports Bar & Grill and is within the licensed premises to be covered by DLH's liquor license.

On three separate occasions, August 10, 16, and 19, 2000, an undercover Lancaster County sheriff's deputy visited Cheetah's. Thereafter, according to DLH, the Commission sent three notices to DLH, one for each occasion, alleging that DLH did allow or permit a "disturbance" in or about the licensed premises in violation of a Commission regulation, § 019.01F1. An administrative hearing was scheduled for October 19, 2000.

At the hearing, the State offered the testimonies and investigation reports of the three undercover officers who had visited Cheetah's. The testimonies were consistent. Each officer testified that he observed female dancers dressed in bikini tops and bottoms, which generally covered their genital areas, buttocks, and breasts, engaging in physical contact with patrons. Contact involved the dancers' touching the patrons, among whom were

the officers, with their hands and breasts, including rubbing their breasts on patrons' faces. No attempts by employees or owners to stop or prevent the contact were witnessed by the officers. The officers also testified that the patrons often tipped the dancers with dollar bills after such contact. At no time did the officers observe topless dancing or physical contact initiated by the patrons toward the dancers. Nor did the officers observe activity which they believed to endanger the patrons, but if they had, they testified that they would have acted. The officers also testified that they did not inform the owners or management of their surveillance, nor did they inquire whether the dancers were agents or employees of DLH. After the officers testified, the State rested.

Hartman was the only witness called to testify on DLH's behalf. Hartman confirmed that Cheetah's is within the licensed premises of DLH and that a contract existed between DLH and Cheetah's whereby Cheetah's would provide adult entertainment to its portion of the premises. Hartman also testified that after receiving notice of the Commission's allegations in the mail, he notified his attorney to make demand on Cheetah's to comply with Nebraska law. To the best of Hartman's knowledge, Cheetah's complied with the terms made in the demand. In support of Hartman's testimony, DLH offered exhibit 9, an acknowledgment signed by the owner of Cheetah's, agreeing to abide by the laws of Nebraska. Hartman further testified that in July 2000, he applied to the Commission to delicense the space occupied by Cheetah's. Hartman wanted to avoid any question concerning the compliance or noncompliance with liquor laws on Cheetah's portion of the premises. The application was unanimously denied by the Commission. At the conclusion of the hearing, the Commission found DLH to be in violation of its regulation, § 019.01F1. The Commission suspended DLH's liquor license for 30 days, 10 days for each offense.

Pursuant to Neb. Rev. Stat. §§ 84-917 to 84-919 (Reissue 1999) of the Administrative Procedure Act (APA), DLH appealed the Commission's decision to the district court. The district court, in affirming the Commission's order, found that (1) the type of business that occurs in Cheetah's does fall under the Commission's authority to regulate dancing where alcohol is

sold; (2) DLH did allow a disturbance in violation of the regulation on three separate occasions; and (3) it was DLH's responsibility, as a liquor license holder, to ensure that the dancers were not violating any of the Commission's regulations.

## ASSIGNMENTS OF ERROR

DLH assigns, rephrased, that the district court erred in (1) finding that the Commission did not exceed its statutory authority in promulgating rules and regulations §§ 019.01F and 019.01F1; (2) affirming suspension of DLH's liquor license for violation of a regulation which is not prohibitory but merely definitional; (3) affirming suspension of DLH's liquor license for violation of a regulation, § 019.01F, which was never alleged to be violated in the Commission's complaint or order; (4) relying upon *Major Liquors, Inc. v. City of Omaha*, 188 Neb. 628, 198 N.W.2d 483 (1972), in affirming the order of the Commission; (5) concluding that the Commission has authority to regulate "dancing" where alcohol is sold; and (6) determining that DLH is responsible for "dancers" at the licensed premises notwithstanding the absence of evidence adduced at the time of trial by the Commission to establish either employment or agency of the individuals by DLH.

## STANDARD OF REVIEW

Appeals from orders or decisions of the Commission are taken in accordance with the APA. Neb. Rev. Stat. § 53-1,116 (Cum. Supp. 2002); *City of Omaha v. Kum & Go*, 263 Neb. 724, 642 N.W.2d 154 (2002). Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *City of Omaha v. Kum & Go, supra*. A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Id*. When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in

connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Id.*

## ANALYSIS

The Commission's "disturbance" regulation at issue in this case provides:

> 019.01F Disturbance: No licensee or partner, principal, agent or employee of any licensee shall allow any unreasonable disturbance, as such term is defined hereunder, to continue without taking the steps, as set forth hereunder, within a licensed premise or in adjacent related outdoor areas.
>
> 019.01F1 A "disturbance" as used in this section shall mean any brawl, fight, or other activity which may endanger the patrons, employees, law enforcement officers, or members of the general public within licensed premises or adjacent related outdoor area. Such term shall include incidents involving, but not necessarily limited to: drug dealing; intoxicated individuals; soliciting of prostitution; or *any physical contact between the licensee's agents or employees and its customers, involving any kissing, or any touching of the breast, buttock, or genital areas.*
>
> . . . .
>
> 019.01F4 A licensee who has conformed with the procedure as set forth in this section shall be deemed to have not permitted a disturbance to occur and continue.

(Emphasis supplied.) The unreasonable disturbance specifically complained of in this case, which we limit our analysis to, is *any physical contact between the licensee's agents or employees and its customers, involving any kissing, or any touching of the breast, buttock, or genital areas.* See § 019.01F1.

 In this appeal, DLH argues that the Commission, an administrative agency, exceeded its statutory authority in promulgating its disturbance regulation. Our review is guided by the following principles of law: The Legislature may delegate to an administrative agency the power to make rules and regulations to implement the policy of a statute. *Governor's Policy Research Office v. KN Energy,* 264 Neb. 924, 652 N.W.2d 865 (2002). However, an administrative agency is limited in its rulemaking

authority to powers granted to the agency by the statutes which it is to administer, and it may not employ its rulemaking power to modify, alter, or enlarge portions of its enabling statute. *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996).

In determining whether the Commission exceeded its statutory authority, we must interpret its enabling legislation. To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *American Legion v. Nebraska Liquor Control Comm.*, 265 Neb. 112, 655 N.W.2d 38 (2003); *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002); *City of Omaha v. Kum & Go*, 263 Neb. 724, 642 N.W.2d 154 (2002).

The Commission is empowered to adopt and promulgate rules and regulations to carry out the Nebraska Liquor Control Act, Neb. Rev. Stat. §§ 53-101 to 53-1,122 (Reissue 1998 & Cum. Supp. 2002), including provisions covering any and all details which are necessary or convenient to the enforcement of the intent, purpose, and requirements of the act. *City of Omaha v. Kum & Go, supra.* In order for a regulation to be "necessary or convenient" to the enforcement of the Nebraska Liquor Control Act, the Commission must show some nexus between the regulation and alcoholic liquors. *County Cork v. Nebraska Liquor Control Comm., supra.* The Commission may not, however, adopt rules and regulations that are in conflict with the act. The power to regulate must be exercised in conformity with all the provisions of the act and in harmony with its spirit and expressed legislative intent. *City of Omaha v. Kum & Go, supra.* According to § 53-101.05:

> The Nebraska Liquor Control Act shall be liberally construed to the end that the health, safety, and welfare of the people of the State of Nebraska are protected and temperance in the consumption of alcoholic liquor is fostered and promoted by sound and careful control and regulation of the manufacture, sale, and distribution of alcoholic liquor.

In the case presently before us, we must decide whether a nexus exists between the regulation and alcoholic liquor. The

regulation prohibits any physical contact between the licensee's agents or employees and its customers, involving any kissing, or any touching of the breast, buttock, or genital areas. We conclude such nexus exists.

In *County Cork v. Nebraska Liquor Control Comm., supra*, we said that for a regulation to be "necessary or convenient" to the enforcement of the Nebraska Liquor Control Act, the Commission must show some nexus between the activity and alcoholic liquor. In *County Cork*, the activity was the sale of tobacco to a minor, which was alleged to be "other illegal activity" under the act. We held that there was no nexus, and the Commission exceeded its statutory authority in promulgating the "other illegal activities" regulation under which County Cork's license was suspended. In *County Cork*, we relied upon *Major Liquors, Inc. v. City of Omaha*, 188 Neb. 628, 198 N.W.2d 483 (1972), wherein this court recognized a nexus between the sale of alcohol and topless dancing. In DLH's case, the activity prohibited by the regulation was the touching of the breast which occurred in this case. The regulations at issue in this case are for the protection of those persons enumerated: patrons, employees, law enforcement officers, or members of the general public within the licensed premises or adjacent outdoor area. The nexus between the activity and alcoholic liquor is apparent in the regulation. The regulations, by their terms, prohibit sexual contact occurring on the licensed premises or in adjacent related outdoor areas as a logical means of protecting patrons, employees, and others on the premises or in adjacent related outdoor areas from activity which could lead to contact endangering those persons within the licensed premises or in adjacent related outdoor areas.

 Having concluded that the Commission's regulation is valid, we address DLH's remaining assignments of error. Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *American Legion v. Nebraska Liquor Control Comm.*, 265 Neb. 112, 655 N.W.2d 38 (2003). A judgment or final order entered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors

appearing on the record. *Morrissey v. Department of Motor Vehicles,* 264 Neb. 456, 647 N.W.2d 644 (2002); *Davis v. Wimes,* 263 Neb. 504, 641 N.W.2d 37 (2002). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Hass v. Neth,* 265 Neb. 321, 657 N.W.2d 11 (2003); *American Legion v. Nebraska Liquor Control Comm., supra.* An appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings. *Kosmicki v. State,* 264 Neb. 887, 652 N.W.2d 883 (2002); *City of Omaha v. Kum & Go,* 263 Neb. 724, 642 N.W.2d 154 (2002).

The record in this case supports the district court's findings that DLH failed to prevent or stop an unreasonable disturbance in violation of § 019.01F. It is undisputed that the physical contact complained of occurred within the licensed premises covered by DLH's liquor license. Furthermore, each officer testified that no attempt was made by DLH or anyone else to stop the physical contact on the three occasions. As the liquor licensee, it is DLH's responsibility to ensure that Cheetah's is in complete compliance with the Commission's rules and regulations.

The record also contains the contract between DLH and Cheetah's, which includes a provision that adult entertainment was to be provided. In addition, the officers testified that the dancers on the licensed premises were receiving tips from patrons. From this evidence, one could reasonably infer that the dancers were agents or employees of DLH.

Finally, the record contains, as DLH asserts, that the Commission found DLH to be in violation of § 019.01F1 and that the district court found DLH to be in violation of § 019.01F. Nonetheless, the district court's finding, on its de novo review, is not arbitrary and capricious, and thus we do not consider this finding to be reversible error.

We note that we have considered all other assignments of error not specifically addressed in this opinion and find them to be without merit. See, *Kubicek v. City of Lincoln,* 265 Neb. 521, 658 N.W.2d 291 (2003); *Woodward v. Andersen,* 261 Neb. 980, 627 N.W.2d 742 (2001).

## CONCLUSION

The Commission did not exceed its statutory authority in promulgating its "disturbance" regulation prohibiting any physical contact between the licensee's agents or employees and its customers, involving any kissing, or any touching of the breast, buttock, or genital areas. We also conclude that the district court's findings are supported by competent evidence. Therefore, we affirm the district court's affirmance of the Commissions' order suspending DLH's liquor license.

AFFIRMED.

GERRARD, J., concurring.

The primary issue presented in this appeal is whether the regulation defining a "disturbance" exceeds the authority granted to the Nebraska Liquor Control Commission (Commission) by the Legislature in the Nebraska Liquor Control Act, Neb. Rev. Stat. § 53-101 et seq. (Reissue 1998 & Cum. Supp. 2002). Stated more specifically, the issue is whether there is a nexus between the regulation and the sale or use of alcoholic liquors. See *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996). The parties to this case have not presented us with a record on which we can base such a determination. Because administrative regulations are presumed to be valid, see *Jacobson v. Solid Waste Agency of Northwest Neb.*, 264 Neb. 961, 653 N.W.2d 482 (2002), and there is no evidence in this record to rebut that presumption, I conclude that DLH has failed to demonstrate that the Commission's regulation is ultra vires. On that basis, I concur in the result reached by the majority.

As noted by the majority, 237 Neb. Admin. Code, ch. 6, § 019.01F (1994) prohibits a licensee from allowing an unreasonable disturbance on the licensed premises, and § 019.01F1 defines a disturbance, in relevant part, as "any physical contact between the licensee's agents or employees and its customers, involving any kissing, or any touching of the breast, buttock, or genital areas." The parties appear to agree that § 019.01F1 has not been enacted pursuant to any statute that specifically authorizes the Commission to regulate such conduct. DLH contends that § 019.01F1 exceeds the Commission's authority to promulgate regulations "necessary or convenient to the enforcement of the intent, purpose, and requirements" of the Nebraska Liquor

Control Act. See § 53-118(4). The initial question is which party bears the burden of showing that a regulation is, or is not, within the authority delegated to an administrative agency.

The answer to that question is provided by the Administrative Procedure Act (APA), Neb. Rev. Stat. § 84-901 et seq. (Reissue 1999). Section 84-906(1) specifically provides that "[t]he filing of any rule or regulation shall give rise to a rebuttable presumption that it was duly and legally adopted." This statutory presumption is consistent with the principle that in considering the validity of a regulation, courts generally presume that legislative or rulemaking bodies, in enacting ordinances or rules, acted within their authority, and the burden rests on those who challenge their validity. *Jacobson, supra*; *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 623 N.W.2d 672 (2001). See, also, *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995); *Dolan v. Svitak*, 247 Neb. 410, 527 N.W.2d 621 (1995); *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995) (rebuttable presumption of validity attaches to actions of administrative agencies and burden of proof rests with party challenging agency's actions).

Furthermore, this rule is consistent with the substantial weight of authority from courts in other jurisdictions, which have applied similar principles in the context of determining whether a rule or regulation is within the scope of authority statutorily delegated to an administrative agency. See, e.g., *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S. Ct. 1652, 36 L. Ed. 2d 318 (1973); *WPPA v. State, Dept. of Revenue*, 148 Wash. 2d 637, 62 P.3d 462 (2003) (en banc); *Mass. Fed. of Teachers v. Bd. of Educ.*, 436 Mass. 763, 767 N.E.2d 549 (2002); *Kuppersmith v. Dowling*, 93 N.Y.2d 90, 710 N.E.2d 660, 688 N.Y.S.2d 96 (1999); *Fogle v. H & G Restaurant*, 337 Md. 441, 654 A.2d 449 (1995); *In re Township of Warren*, 132 N.J. 1, 622 A.2d 1257 (1993); *Ford Dealers v. Department of Motor Vehicles*, 32 Cal. 3d 347, 650 P.2d 328, 185 Cal. Rptr. 453 (1982); *Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d 911 (Iowa 1979); *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193 (Mo. 1972) (en banc); *Norwood v. Paranteau*, 75 S.D. 303, 63 N.W.2d 807 (1954); *Toole v. State Bd. of Dentistry*, 306 Mich. 527, 11 N.W.2d 229 (1943); *Public

*Counsel v. Public Utility Com'n*, 104 S.W.3d 225 (Tex. App. 2003); *N.M. Mining Ass'n v. N.M. Mining Com'n*, 122 N.M. 332, 924 P.2d 741 (N.M. App. 1996); *A-Plus v. Com'r of Jobs and Training*, 494 N.W.2d 522 (Minn. App. 1993). Cf. *O'Callaghan v. Rue*, 996 P.2d 88 (Alaska 2000) (court exercises independent judgment, but defers to areas of agency expertise and policy determinations). But see *Ore. Newspaper Pub. v. Peterson*, 244 Or. 116, 415 P.2d 21 (1966) (en banc) (burden on administrative agency). Cf. *In re Club 107*, 152 Vt. 320, 566 A.2d 966 (1989) (deference not warranted where Liquor Control Board regulated outside area of expertise).

As one leading commentator has explained:

> Placing the burden on agencies generally to demonstrate the lawfulness of their rules when they are challenged in court would be inconsistent with the well-established general presumption of agency regularity. Placing that burden on agencies is also not rational because, under normal circumstances, one would expect persons occupying public positions of trust to honor their oath of office and to act lawfully. Shifting this burden to agencies generally would also place an unnecessarily heavy burden on them, requiring agencies to incur significant costs in fully defending a rule every time an unsupported allegation of invalidity was made in a lawsuit. In addition, generally requiring agencies to demonstrate initially and finally the validity of their rules when they are challenged in court would needlessly increase the uncertainty with respect to the validity of many agency rules, would encourage litigation, and would automatically denigrate the competence and good faith of our government administrators. . . . Consequently . . . agency rules should be presumed valid, and the burden should be imposed on those who challenge them to initially and finally demonstrate their illegality, except in those unusual situations where countervailing considerations of public policy dictate a contrary result.

Arthur Earl Bonfield, State Administrative Rule Making § 9.2.9 at 569-70 (1986 & Supp. 1993).

I recognize that in *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 465, 550 N.W.2d 913, 919 (1996), we said

that "in order for a regulation to be 'necessary or convenient' to the enforcement of the [Nebraska Liquor Control] Act, *the Commission must show* some nexus between [the challenged regulation] and alcoholic liquors." (Emphasis supplied.) We did not otherwise discuss the burden of showing such a nexus. To the extent *County Cork* implies that the burden of proving a nexus is on the Commission, it is contrary to § 84-906(1). More significantly, however, placing the burden of proving a nexus was not before us in that case. In *County Cork*, the Commission did not attempt to show that there was a nexus between the regulation at issue in that case and alcoholic liquor. See brief for appellee at 8 to 11, case No. S-95-1395. Since neither party in *County Cork* contended there was a nexus between the regulation and the sale or use of alcoholic liquor, we were not required to place the burden of proof in order to conclude there was no nexus present in that case.

Based on the foregoing analysis, I would hold that where a party asserts that an administrative rule or regulation is ultra vires, the rule or regulation is presumptively valid, and the burden is on the party who challenges its validity. See *Jacobson v. Solid Waste Agency of Northwest Neb.*, 264 Neb. 961, 653 N.W.2d 482 (2002). More specifically, a party asserting that a Commission regulation is not "necessary or convenient" to the enforcement of the Nebraska Liquor Control Act has the burden to show that there is no nexus between the challenged regulation and the sale or use of alcoholic liquors. See, *County Cork, supra*; § 53-118(4). " 'That burden cannot be carried "by arguing that the record does not affirmatively show facts which support the regulation." ' " *Mass. Fed. of Teachers v. Bd. of Educ.*, 436 Mass. 763, 771, 767 N.E.2d 549, 558 (2002).

The difficulty in this case is that the record is devoid of any basis upon which this issue can properly be decided. Meaningful review of a regulation is very difficult without some substantiated explanation of the basis for the regulation. Courts are not intended to be experts in the area of alcohol regulation, nor are courts intended to be experts in other state-regulated areas. It is not the function of a court either to "provide a nexus" or to "show the lack of a nexus" between a challenged regulation and the regulated activity in the absence of evidence tending to

prove or disprove the existence of such a relationship. A developed record is a prerequisite to meaningful judicial review.

For instance, in *Anderson, Leech & Morse v. Liquor Bd.*, 89 Wash. 2d 688, 690, 575 P.2d 221, 223 (1978) (en banc), the appellant tavern owners challenged a regulation prohibiting "topless table dancing" on licensed premises. The record included evidence noting the "great increase in arrests for disorderly conduct on licensed premises, and the frequency with which these incidents occurred where topless table dancing was permitted." *Id.* at 695, 575 P.2d at 226. Based on that evidence, the court concluded that there was "a nexus between the conduct prohibited and the sale of liquor." *Id.*

This court has engaged in similar analyses when presented with records that substantiate the arguments made by the parties. For example, in *County of Dodge v. Department of Health*, 218 Neb. 346, 355 N.W.2d 775 (1984), the Department of Health had concluded that a hospital could purchase, but not lease, new nuclear medicine equipment. The record contained testimony from a hospital administrator regarding the need for the equipment and the choice to lease rather than purchase the equipment, as well as testimony from a certified public accountant and a financial feasibility analyst regarding the financial costs and benefits of either purchasing or leasing the equipment. Based on that evidence, we concluded that the Department of Health's rules and regulations contravened the statute that the agency was obliged to administer. *Id.* Compare *Cornhusker Christian Ch. Home v. Dept. of Soc. Servs.*, 227 Neb. 94, 416 N.W.2d 551 (1987) (upholding regulation prohibiting childcare agencies from using corporal punishment).

The record in the instant case contains no comparable evidence regarding the issue presented. In the absence of such evidence, I conclude that DLH has not met its burden of rebutting the presumption that § 019.01F1 was lawfully adopted.

Nonetheless, the majority concludes, in relevant part, that the Commission's regulations,

> by their terms, prohibit sexual contact occurring on the licensed premises or in adjacent related outdoor areas as a logical means of protecting patrons, employees, and others on the premises or in adjacent related outdoor areas from

activity which could lead to conduct endangering those persons within the licensed premises or in adjacent related outdoor areas.

I would not go that far. First, the majority's reasoning is circular. The majority appears to conclude that the Commission's regulations are valid solely because the regulations are a logical means of protecting people from the conduct that the regulations prohibit. But more significantly, the record before us does not provide us with a basis for the majority's conclusion—we should be in the business of "judging" whether a nexus exists based on the evidence presented, not providing such a nexus in the absence of such evidence. Thus, we should simply conclude that DLH has failed to meet its burden of showing the absence of a nexus between the regulation and the sale or use of alcoholic liquor, and reserve judgment on whether such a nexus exists until a record is presented that allows for a meaningful review of the matter.

I note that the Legislature's 1994 adoption of significant sections of the 1981 revision of the Model State Administrative Procedure Act, although it did not take effect until after the regulations at issue in this case were promulgated, promises to greatly facilitate the judicial review of agency rules and regulations. Compare Unif. Law Comm. Model State Admin. Procedure Act (1981), 15 U.L.A. 7 (2000 & Supp. 2003), with 1994 Neb. Laws, L.B. 446. For rules or regulations adopted after August 1, 1994, § 84-906.01 requires an administrative agency to maintain an official rulemaking or regulation-making record, containing, inter alia, all of the written materials or petitions prepared for and by the agency in connection with the proposed rule or regulation, any content of oral presentations made in a proceeding about the proposed rule or regulation, and a copy of the "concise explanatory statement" that the agency is required to file with the Secretary of State stating the reasons for adopting the rule or regulation. See § 84-907.04(1). Upon judicial review, this record constitutes the official agency record with respect to the rule or regulation, although it need not constitute the exclusive basis for judicial review of the rule or regulation. § 84-906.01(3). Furthermore, "[o]nly the reasons contained in the concise explanatory statement may be used by an agency as justifications for the adoption

of the rule or regulation in any proceeding in which its validity is at issue." § 84-907.04(2).

These provisions are intended to facilitate a more structured and rational agency and public consideration of proposed rules, and the process of judicial review of the validity of rules. See Unif. Law Comm. Model State Admin. Procedure Act (1981) § 3-112, comment, 15 U.L.A. 51 (2000). "A court reviewing the legality of a rule can do so effectively only if it has access to all the relevant materials that were generated in the agency proceeding upon which that rule was based. Consequently, a rule-making record requirement helps to assure the legality of rules." Arthur Earl Bonfield, State Administrative Rule Making § 6.12.1(a) at 327 (1986 & Supp. 1993).

This requirement does not shift the ultimate burden of persuasion to the agency. See § 84-906(1). See, also, Unif. Law Comm. Model State Admin. Procedure Act (1981), § 5-116(a)(1), 15 U.L.A. 144 (2000). However, it certainly places a burden of production on the agency to provide a reviewing court with the record maintained pursuant to § 84-906.01. This record will provide a basis for judicial review and, in conjunction with § 84-907.04, will provide the party challenging the rule or regulation with a meaningful opportunity to contest the agency's basis for enacting the rule or regulation. Unfortunately, the regulations at issue in this case were filed prior to the August 1, 1994, effective date of the amendments to the APA, and the Legislature specifically provided that the changes made to the APA should not affect the validity of a rule or regulation adopted prior to that date. § 84-906(4).

It is entirely possible, and perhaps even likely, that there is a nexus between § 019.01F1 and the sale or use of alcoholic liquor. Cf. *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996), citing *Major Liquors, Inc. v. City of Omaha*, 188 Neb. 628, 198 N.W.2d 483 (1972) (recognizing, in dicta, a nexus between topless dancing and alcohol consumption). However, I am unable to reach that conclusion in this case, because it is unjustified by the record before us. In the absence of evidence proving or disproving a nexus between § 019.01F1 and the sale or use of alcoholic liquor, I conclude that DLH failed to meet its burden to rebut the presumption that

§ 019.01F1 was lawfully enacted. Based on this reasoning, I concur in the result reached by the majority.

HENDRY, C.J., and CONNOLLY, J., join in this concurrence.