756 N.W.2d 145 (2008)
276 Neb. 612
UPPER BIG BLUE NATURAL RESOURCES DISTRICT, a political subdivision of the State of Nebraska, appellant and cross-appellee,
v.
STATE OF NEBRASKA DEPARTMENT OF NATURAL RESOURCES, an executive department and agency of the State of Nebraska, and Ann S. Bleed, in her official capacity as acting director of the Department of Natural Resources, appellees and cross-appellants.
Upper Big Blue Natural Resources District, a political subdivision of the State of Nebraska, appellant and cross-appellee,
v.
State of Nebraska Department of Natural Resources, an executive department and agency of the State of Nebraska, and Ann S. Bleed, in her official capacity as acting director of the Department of Natural Resources, appellees and cross-appellants, and
Little Blue Natural Resources District, a political subdivision of the State of Nebraska, appellee.
Nos. S-07-905, S-07-906.
Supreme Court of Nebraska.
September 26, 2008.
*146 Steven G. Seglin and Thomas E. Jeffers, of Crosby Guenzel, L.L.P., Lincoln, for appellant.
Jon Bruning, Attorney General, David D. Cookson, and Justin D. Lavene for appellees Department of Natural Resources and Ann S. Bleed.
*147 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
The primary issue presented by these consolidated appeals is whether the Nebraska Ground Water Management and Protection Act (Act),[1] provides the Department of Natural Resources (DNR) with the authority to consider a geographic area located in one river basin but hydrologically connected to a second basin when determining that the second basin is fully appropriated.

FACTUAL BACKGROUND
Under the Act, specifically §§ 46-713 and 46-714, the DNR has the authority to determine whether any river basin, subbasin, or reach is fully appropriated. On December 30, 2005, the DNR made a preliminary determination that the Upper Platte River Basin was fully appropriated. In making such a determination with respect to the Upper Platte River Basin, the DNR included a small geographic area located in the Big Blue River Basin.
Pursuant to the requirements of § 46-714(4), the DNR then held a series of public hearings regarding this preliminary determination. Following those hearings, the DNR issued an "Order of Final Determination of River Basins, Subbasins, or Reaches as Fully Appropriated, and Describing Hydrologically Connected Geographic Areas." In this order, dated April 21, 2006, the DNR again concluded that the Upper Platte River Basin was fully appropriated, again including in its determination a small geographic area located in the Big Blue River Basin. This inclusion was based on a DNR determination that the surface water from the Upper Platte River Basin was hydrologically connected to ground water located in the Big Blue River Basin. The geographic area located in the Big Blue River Basin is within the boundaries of the Upper Big Blue Natural Resources District (District).
The District filed suit against the DNR in district court. Though the District brought two actions  one a declaratory judgment, the other an action under the Administrative Procedure Act (APA)[2]  each made the same allegations: (1) The DNR exceeded its statutory authority under the Act by considering a geographic area located in the Big Blue River Basin when making its determination that the Upper Platte River Basin was fully appropriated, and (2) the DNR exceeded its statutory authority by promulgating 457 Neb. Admin. Code, ch. 24, § 001.02 (2006).
The district court found that the DNR had not exceeded its authority in promulgating 457 Neb. Admin. Code, ch. 24, § 001.02, and also affirmed the actions of the DNR and its director in including the disputed geographic area in making its determination that the Upper Platte River Basin was fully appropriated. The District appealed. We granted bypass of the Court of Appeals and affirm.

ASSIGNMENT OF ERROR
On appeal in each of these actions, the District assigns two assignments of error, which can be consolidated and restated as one: The district court erred in finding that the DNR and its director did not exceed their statutory authority by promulgating *148 and interpreting 457 Neb. Admin. Code, ch. 24.
The DNR cross-appeals and argues that the district court lacked jurisdiction over the District's APA petition for review because this is not a "contested case" under the APA.

STANDARD OF REVIEW
[1] To the extent the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

ANALYSIS

RELEVANT STATUTORY PROVISIONS
In order to fully understand and analyze the DNR's argument, it is necessary to set forth the statutory provisions relevant to the issues presented by this appeal. Section 46-713(1)(a) requires the DNR to
complete an evaluation of the expected long-term availability of hydrologically connected water supplies for both existing and new surface water uses and existing and new ground water uses in each of the state's river basins and shall issue a report that describes the results of the evaluation.... For each river basin, subbasin, or reach evaluated, the report shall describe (i) the nature and extent of use of both surface water and ground water in each river basin, subbasin, or reach, (ii) the geographic area within which the department preliminarily considers surface water and ground water to be hydrologically connected and the criteria used for that determination, and (iii) the extent to which the then-current uses affect available near-term and long-term water supplies.
Subsection (1)(b) further provides that "[biased on the information reviewed in the evaluation process, the department shall arrive at a preliminary conclusion for each river basin, subbasin, and reach evaluated as to whether such river basin, subbasin, or reach presently is fully appropriated without the initiation of additional uses."
Section 46-713(1)(d) requires in part that the DNR,
[i]n preparing the report [required under subsection (1)(a),] shall rely on the best scientific data, information, and methodologies readily available to ensure that the conclusions and results contained in the report are reliable. In its report, the department shall provide sufficient documentation to allow these data, information, methodologies, and conclusions to be independently replicated and assessed.
In addition to the substantive provisions of the Act, the findings of the Legislature were also codified and are instructive:
(1) The management, conservation, and beneficial use of hydrologically connected ground water and surface water are essential to the continued economic prosperity and well-being of the state, including the present and future development of agriculture in the state;
(2) Hydrologically connected ground water and surface water may need to be managed differently from unconnected ground water and surface water in order to permit equity among water users and to optimize the beneficial use of interrelated ground water and surface water supplies;

*149 (3) Natural resources districts already have significant legal authority to regulate activities which contribute to declines in ground water levels and to nonpoint source contamination of ground water and are the preferred entities to regulate, through ground water management areas, ground water related activities which are contributing to or are, in the reasonably foreseeable future, likely to contribute to conflicts between ground water users and surface water appropriators or to water supply shortages in fully appropriated or overappropriated river basins, subbasins, or reaches;
(4) The Legislature recognizes that ground water use or surface water use in one natural resources district may have adverse affects on water supplies in another district or in an adjoining state. The Legislature intends and expects that each natural resources district within which water use is causing external impacts will accept responsibility for ground water management in accordance with the Nebraska Ground Water Management and Protection Act in the same manner and to the same extent as if the impacts were contained within that district;
(5) The Department of Natural Resources is responsible for regulation of surface water resources and local surface water project sponsors are responsible for much of the structured irrigation utilizing surface water supplies, and these entities should be responsible for regulation of surface water related activities which contribute to conflicts between ground water users and surface water appropriators or to water supply shortages in fully appropriated or overappropriated river basins, subbasins, or reaches;
(6) All involved natural resources districts, the department, and surface water project sponsors should cooperate and collaborate on the identification and implementation of management solutions to conflicts between ground water users and surface water appropriators or to water supply shortages in fully appropriated or overappropriated river basins, subbasins, and reaches[.][4]

WHETHER DNR EXCEEDED ITS AUTHORITY BY ENACTING DISPUTED REGULATION
[2] The District assigns that the DNR exceeded its statutory authority when promulgating 457 Neb. Admin. Code, ch. 24, § 001.02, of the DNR's rules and regulations.
[3-5] The Legislature may delegate to an administrative agency the power to make rules and regulations to implement the policy of a statute.[5] However, an administrative agency is limited in its rulemaking authority to powers granted to the agency by the statutes which it is to administer, and it may not employ its rulemaking power to modify, alter, or enlarge portions of its enabling statute.[6] Deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent.[7]
Section 46-748 authorizes the DNR to "adopt and promulgate ... such rules and regulations as are necessary to the discharge of duties assigned to the director or the Department ... by the ... Act." And the last sentence of § 46-713(1)(d) directs *150 the DNR, in connection with the preparation of its report regarding the appropriated status of a river basin, to "specify by rule and regulation the types of scientific data and other information that will be considered for making the preliminary determinations required by this section."
Under this rulemaking authority, the DNR enacted 457 Neb. Admin. Code, ch. 24. At particular issue in this case is § 001.02, which provides:
The geographic area within which the Department preliminarily considers surface water and ground water to be hydrologically connected for the purpose prescribed in Section 46-713(3) is the area within which pumping of a well for 50 years will deplete the river or a base flow tributary thereof by at least 10 percent of the amount pumped in that time.
The parties appear to agree that there is no language in 457 Neb. Admin. Code, ch. 24, § 001.02, which precludes surface water and ground water that is geographically located in different natural resources districts from being hydrologically connected within the meaning of the regulation. Nor do the parties dispute that applying the regulation resulted in the DNR's conclusion that ground water geographically located in the Big Blue River Basin was hydrologically connected to surface water in the Upper Platte River Basin. Finally, there is no dispute that the result of the application of this regulation in this case was that a geographic area located in the Big Blue River Basin was included in the DNR's order finding that the Upper Platte River Basin was fully appropriated. Such a determination imposes certain restrictions with respect to the use of surface water and ground water in the affected geographic area.
In support of its contention that the DNR exceeded its authority, the District notes there is nothing in the language of the relevant statutes which permits the DNR to cross natural resources district boundary lines when making determinations regarding the appropriated status of river basins, subbasins, and reaches. The District further argues that language in § 46-713 expressly provides that the hydrological connection should be evaluated "in each of the state's river basins" (emphasis supplied), and that such language implies areas outside a river basin cannot be considered in determining appropriated status. We disagree with the District's interpretation.
An examination of the findings of the Legislature with respect to the passage of the Act demonstrates that the Legislature was fully aware of the hydrological connection often existing between surface water and ground water[8] and was interested in protecting those resources.[9] The findings also indicate that the Legislature recognized these hydrological connections sometimes affect more than one natural resources district[10] and that it was the expectation of the Legislature that all interested parties would cooperate in the management of the State's hydrologically connected water resources.[11] This expectation of cooperation was also expressed in § 46-715, which provides for the cooperation of the DNR and any affected natural resources districts in preparing an integrated management plan upon a DNR determination that a river basin is fully appropriated or overappropriated.
*151 In addition to recognizing this connection in its findings, the Legislature explicitly required that these areas of hydrological connection be considered by the DNR in making its determinations under the Act. In particular, § 46-713(1)(a) provides that the DNR's report with respect to its preliminary determination as to the appropriated status of a river basin "shall describe ... the geographic area within which the department preliminarily considers surface water and ground water to be hydrologically connected and the criteria used for that determination." Moreover, the DNR is required to set forth by regulation the scientific data and information it utilizes in determining this hydrological connection.[12]
Thus, the Act explicitly requires consideration of hydrological connections in determining the appropriated status of a river basin. What the Act does not do is set forth any limitations on the DNR's ability to define that connection. Given the detail of the Act and its focus on the hydrological connection between surface water and ground water, we find this omission telling. We agree with the DNR that the District's interpretation would
require the Department to completely ignore the real-world hydrologic interconnections between surface water and ground water, and said connections' effect on a "basin." In addition, such a requirement would set an arbitrary standard for managing the State's interconnected water resources, which simply goes against the intent of the Act.
[T]he intent of the Act is ... to integrate the management of surface water and ground water...."[13]
We therefore conclude that 457 Neb. Admin. Code, ch. 24, § 001.02, was authorized by its enabling legislation and that the DNR did not exceed its statutory authority in enacting it. The District's assignment of error is without merit.

DNR'S CROSS-APPEAL
[6] On cross-appeal, the DNR assigns that the district court lacked jurisdiction over the APA action because the DNR's order did not fall within any of the three categories that may be appealed under the APA.[14] In particular, the DNR contends that we are not presented with a contested case under the APA.
We conclude, however, that even assuming the April 21, 2006, order was not part of a contested case and is not appealable under the APA, we nevertheless have jurisdiction to decide the issue of whether the DNR exceeded its authority in enacting 457 Neb. Admin. Code, ch. 24, § 001.02.
Section 84-911(1) provides:
[T]he validity of any rule or regulation may be determined upon a petition for a declaratory judgment thereon addressed to the district court of Lancaster County if it appears that the rule or regulation or its threatened application interferes with or impairs or threatens to interfere with or impair the legal rights or privileges of the petitioner. The agency shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule or regulation in question.
In fact, the District did file a declaratory judgment action against the DNR questioning the validity of the regulation. Accordingly, the district court, and now this *152 court, had jurisdiction to determine whether the DNR exceeded its authority by enacting the regulation in question. We need not further address the DNR's cross-appeal.

CONCLUSION
We conclude that 457 Neb. Admin. Code, ch. 24, § 001.02, was authorized by enabling legislation. As such, the DNR did not exceed its authority in enacting the regulation. We therefore affirm the decision of the district court in these consolidated appeals.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. §§ 46-701 to 46-754 (Reissue 2004, Cum.Supp.2006 & Supp.2007).
[2] See Neb.Rev.Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum.Supp.2006).
[3] DLH, Inc. v. Nebraska Liquor Control Comm., 266 Neb. 361, 665 N.W.2d 629 (2003).
[4] § 46-703.
[5] Scofield v. State, 276 Neb. 215, 753 N.W.2d 345 (2008); DLH, Inc., supra note 3.
[6] Id.
[7] Belle Terrace v. State, 274 Neb. 612, 742 N.W.2d 237 (2007).
[8] § 46-703(2).
[9] § 46-703(1).
[10] § 46-703(4).
[11] § 46-703(6).
[12] § 46-713(1)(d).
[13] Brief for appellees at 36.
[14] See §§ 84-902 to 84-917.