Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/26/2019 09:07 AM CDT

- 56 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

MCMANUS ENTERPRISES, INC., DOING BUSINESS AS
HEIDELBERG'S, APPELLANT, V. NEBRASKA LIQUOR
CONTROL COMMISSION, APPELLEE.

___ N.W.2d ___

Filed May 3, 2019.    No. S-18-699.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Judgments: Appeal and Error.** An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.

4. **Administrative Law: Judgments.** Whether an agency decision conforms to the law is by definition a question of law.

5. **Administrative Law: Judgments: Statutes: Appeal and Error.** To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented which an appellate court decides independently of the decision made by the court below.

6. **Administrative Law: Statutes.** For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.

7. ____: ____. Properly adopted and filed regulations have the effect of statutory law.

8. **Administrative Law.** Absent a statutory or regulatory indication to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning.

9. ____. A rule is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous.

- 57 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

10. ____. A court will construe regulations relating to the same subject matter together to maintain a consistent and sensible scheme.

11. ____. A court must attempt to give effect to all parts of a regulation, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

12. **Administrative Law: Intent.** In determining the meaning of regulatory language, its ordinary and grammatical construction is to be followed, unless an intent appears to the contrary or unless, by following such construction, the intended effect of the provisions would apparently be impaired.

13. **Administrative Law: Liquor Licenses.** Under 237 Neb. Admin. Code, ch. 6, § 019.01F (2012), a licensee cannot be sanctioned for a violation unless the licensee has allowed an unreasonable disturbance to continue.

14. ____: ____. Under 237 Neb. Admin. Code, ch. 6, § 019.01F (2012), in order for "other activity" to be a disturbance, the dangerous activity itself must arise and be of such a nature that may place others in danger.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Reversed and remanded with directions.

Charles D. Humble, of Erickson & Sederstrom, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Milissa Johnson-Wiles for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

This appeal turns on the correct interpretation of the Nebraska Liquor Control Commission's "disturbance rule."[1] The rule's plain language applies only where a licensee "allow[s] any unreasonable disturbance; as such term is defined [in the rule], *to continue without taking the steps*, as set forth [in the

---

[1] 237 Neb. Admin. Code, ch. 6, § 019.01F (2012).

- 58 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

rule]."[2] The commission and the district court on review[3] disregarded that plain language: ignoring the words "to continue." Although we must reverse this license cancellation, we emphasize that our decision does not preclude the commission from adopting a rule that would impose upon licensees a duty to take reasonable steps to prevent disturbances from occurring in the first instance. But its existing rule does not do so, and we are required to apply the rule as written.

## BACKGROUND

### Disturbance Rule

Because our decision turns upon the plain language of the disturbance rule, we recite it in full:

019.01F Disturbance: No licensee or partner, principal, agent or employee of any licensee shall allow any unreasonable disturbance; as such term is defined hereunder, to continue without taking the steps, as set forth hereunder, within a licensed premise or in adjacent related outdoor areas.

019.01F1 A "Disturbance" as used in this section shall mean any brawl, fight, or other activity which may endanger the patrons, employees, law enforcement officers, or members of the general public within licensed premises or adjacent related outdoor area. Such term shall include incidents involving, but not necessarily limited to: drug dealing; intoxicated individuals; soliciting of prostitution; or any physical contact between the licensee's agents or employees and its customers, involving any kissing, or any touching of the breast, buttock or genital areas. Any brawl fight or other activity which results in serious injury to any patro[n], employee or members of the

---

[2] *Id*. (emphasis supplied).

[3] See, Neb. Rev. Stat. § 53-1,116 (Reissue 2010) (appeal from commission order in accordance with Administrative Procedure Act); Neb. Rev. Stat. § 84-917 (Reissue 2014) (judicial review under Administrative Procedure Act).

general public shall be reported to law enforcement. Serious injury means any gunshot wou[n]d, knife or other stab wound or any other injury requiring medical treatment onsite or transportation to a medical facility for treatment. Licensees and their employees shall not prohibit or interfere in any way with a patro[n] who chooses to contact law enforcement in the event they are assaulted on the premises.

**019.01F2** Unless there is reason to believe that a licensee or partner, principal, agent or employee of any licensee would endanger himself/herself or others, such person shall take such action as is reasonably necessary to terminate the disturbance. Physical force should be exercised only in extreme circumstances and should be limited to the force reasonably required to terminate the disturbance and remove the individual from the licensed premise, without endangering any patron or other person.

**019.01F3** In the event efforts taken in accordance with the preceding subparagraph are not successful or if there is reason to believe that the licensee, partner, principal, agent or employee of any licensee may create a danger to himself/herself or others, th[e]n in such event, such person shall immediately contact law enforcement personnel to assist in properly handling the disturbance. In the event law enforcement and/or medical personnel are summoned, the directions and/or orders given by such law enforcement or medical personnel shall be followed.

**019.01F4** A licensee who has conformed with the procedure as set forth in this section shall be deemed to have not permitted a disturbance to occur and continue. Licensees who wish to document their compliance with this rule may maintain a log in which they document disturbances or other unusual occurrences.[4]

---

[4] § 019.01F.

## EVENTS

John McManus is the owner of McManus Enterprises, Inc. (collectively McManus), which operates Heidelberg's bar in Lincoln, Nebraska. In August 2017, a professional boxing match was held at an arena in Lincoln. The day before the match, an event promoter approached McManus, asking to host an event at Heidelberg's after the match. McManus agreed. The promoter hired and paid a company to provide security for the event.

The Omaha Police Department informed the Lincoln Police Department (LPD) that an event following the last boxing match in Omaha, Nebraska, resulted in an "all call" disturbance. "All call" means a radio call directing all available officers to respond. LPD became concerned that "there could be a gang following and some violent problems." An LPD officer testified that on the evening of the match, LPD approached John McManus, the owner, about its concerns and informed him of the incident following the last boxing match in Omaha. The owner testified that he was unaware of problems following the last boxing match in Omaha and that LPD never informed him about such issues.

After the match, LPD had 10 to 15 officers in the parking lot of Heidelberg's. About 1:55 a.m., a small group of people clustered around the front door started a fight that rippled through the crowd. LPD entered the bar and began to break up the fights. One officer requested an all-available-unit call. A few of the security company's guards aided LPD in breaking up the fights. Approximately 15 to 20 minutes later, all patrons were out of the bar.

## LICENSE PROCEEDING

The commission charged McManus with "allow[ing] or permit[ting] a disturbance," in violation of § 019.01F. Although the commission charged McManus with a second violation, it dismissed that charge at the close of the hearing.

After the hearing, the commission found that McManus violated the disturbance rule when it (1) "allow[ed] or permit[ted] a disturbance in or about the licensed premises," (2) "ignore[d] security concerns that were expressed to it by law enforcement and proceeded with the event despite the warning," and (3) "willingly turn[ed] over a portion of [its] licensed business to the care and control of an unregulated third party and its security force," and that (4) such willful actions "created an unreasonable threat to the health, safety and welfare of its patrons and first responders." The commission canceled McManus' liquor license.

### District Court

After McManus sought judicial review of the commission's order, the district court concentrated its analysis on the "other activity which may endanger" language in the definition of "disturbance" in § 019.01F1. It reasoned that because McManus was aware of the Omaha "all call" and admitted to similar problems with previous events, it was aware of the potential danger. It reasoned that the actions of the security company and LPD could not be attributed to McManus, because McManus had no control over them. The court concluded that the record supported the commission's findings that McManus violated the disturbance rule when it was aware of the danger and failed to take reasonable steps to terminate the disturbance. It affirmed the commission's order.

McManus filed a timely appeal, which we moved to our docket.[5]

### ASSIGNMENTS OF ERROR

McManus assigns, restated, that the district court erred in (1) failing to apply the plain meaning of the disturbance rule and thereby finding that McManus allowed a disturbance and (2) canceling McManus' liquor license "on the basis that [McManus] failed to take actions required in the . . .

---

[5] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

- 62 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

disturbance rule to prevent the disturbance from continuing when the required actions already had been taken by third parties to prevent the disturbance from continuing."

## STANDARD OF REVIEW

[1-3] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[6] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[7] An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[8]

[4,5] Whether an agency decision conforms to the law is by definition a question of law.[9] To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented which an appellate court decides independently of the decision made by the court below.[10]

## ANALYSIS

The commission is empowered to adopt and promulgate rules and regulations to carry out the Nebraska Liquor Control Act,[11] including provisions covering any and all details which

---

[6] *Leon V. v. Nebraska Dept. of Health & Human Servs.*, 302 Neb. 81, 921 N.W.2d 584 (2019).

[7] *Id.*

[8] *Id.*

[9] *Betty L. Green Living Trust v. Morrill Cty. Bd. of Equal.*, 299 Neb. 933, 911 N.W.2d 551 (2018).

[10] *Leon V., supra* note 6.

[11] Neb. Rev. Stat. §§ 53-101 to 53-1,122 (Reissue 2010 & Cum. Supp. 2018).

- 63 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

are necessary or convenient to the enforcement of the intent, purpose, and requirements of the act.[12] McManus does not dispute that as a licensee, it is subject to the rules and regulations of the act, including the disturbance rule.

McManus instead contends that the district court erred when it agreed with the commission that the disturbance occurred when McManus hosted the event. It argues this is contrary to the plain reading of the regulation, because the regulation is designed to terminate disturbances that are occurring from continuing. It argues that nothing in the regulation places a duty on a licensee to take action against something that might or could happen. We agree.

[6,7] For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.[13] Indeed, we have often said that properly adopted and filed regulations have the effect of statutory law.[14]

[8,9] Absent a statutory or regulatory indication to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning.[15] A rule is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous.[16] Neither party argued that the disturbance rule is ambiguous. We agree that its plain and ordinary meaning controls our decision.

[10] A court will construe regulations relating to the same subject matter together to maintain a consistent and sensible scheme.[17] Consequently, we read § 019.01F, which includes its subparagraphs, §§ 019.01F1 to 019.01F4, to determine the

---

[12] See *DLH, Inc. v. Nebraska Liquor Control Comm.*, 266 Neb. 361, 665 N.W.2d 629 (2003).

[13] *Melanie M. v. Winterer*, 290 Neb. 764, 862 N.W.2d 76 (2015).

[14] See, e.g., *Leon V., supra* note 6.

[15] *In re Petition of Golden Plains Servs. Transp.*, 297 Neb. 105, 898 N.W.2d 670 (2017).

[16] *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019).

[17] *Utelcom, Inc. v. Egr*, 264 Neb. 1004, 653 N.W.2d 846 (2002).

- 64 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
McManus Enters. v. Nebraska Liquor Control Comm.
Cite as 303 Neb. 56

meaning of the disturbance rule as a whole. In discussing the rule, reference to § 019.01F will generally refer to the entire rule. But when quoting the rule, we will use a specific paragraph to enable a reader to easily locate our quotation.

By its plain language, § 019.01F dictates that no licensee shall allow any unreasonable disturbance to continue. The commission argues that the regulation also prohibits a licensee from allowing a disturbance to occur. Logically, in order for a disturbance to continue, it must first occur. But as we explain, under the plain language of the regulation, a licensee does not violate the disturbance rule until a disturbance has occurred.

[11] First and foremost, the first section of the disturbance rule compels this reading. It states that "[n]o licensee . . . shall allow any unreasonable disturbance; as such term is defined hereunder, to continue without taking the steps, as set forth hereunder, within a licensed premise or in adjacent related outdoor areas."[18] When quoting from this language, the district court decision simply omitted the words "to continue." Given that we treat a regulation like a statute,[19] a settled principle of statutory interpretation[20] dictates this rule: A court must attempt to give effect to all parts of a regulation, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. The district court's reading disregarded this principle.

A plain reading of § 019.01F2 supports our conclusion. It requires the licensee and those who act for the licensee to "take such action as is reasonably necessary *to terminate the disturbance*."[21] "Terminate" means "[t]o bring to an end, put

---

[18] § 019.01F.

[19] See *Melanie M., supra* note 13.

[20] See *Patterson v. Metropolitan Util. Dist.*, 302 Neb. 442, 923 N.W.2d 717 (2019).

[21] § 019.01F2 (emphasis supplied).

- 65 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

an end to, cause to cease."[22] It seems evident that one cannot "terminate" something that has not occurred.

Section 019.01F3 reinforces this understanding. "In the event efforts taken in accordance with [§ 019.01F2] are not successful . . . , th[e]n in such event, such person shall immediately contact law enforcement personnel to assist in properly handling the disturbance."[23] Efforts cannot be either successful or unsuccessful until a disturbance has occurred and the licensee or its representative has attempted some "action . . . to terminate the disturbance."[24] And how, a reader of the regulation might reasonably ask, is one to request assistance from law enforcement in "properly handling the disturbance" until after a disturbance has commenced.[25]

[12] Finally, § 019.01F4 provides a safe harbor for licensees which have "conformed" to the disturbance rule. It states in part, "A licensee who has conformed with the procedure as set forth in this section shall be deemed to have not permitted a disturbance to occur *and* continue."[26] Another rule of statutory construction[27] leads to this rule: In determining the meaning of regulatory language, its ordinary and grammatical construction is to be followed, unless an intent appears to the contrary or unless, by following such construction, the intended effect of the provisions would apparently be impaired. Under the interpretation urged by the commission, one would expect § 019.01F4 to read "occur *or* continue," but it does not. The plain and ordinary meaning of "and," in this context, means that a disturbance has *both* "occur[red]" and "continue[d]."

---

[22] "Terminate," Oxford English Dictionary Online, http://www.oed.com/view/Entry/199426 (last visited Apr. 19, 2019).

[23] § 019.01F3.

[24] § 019.01F2.

[25] See § 019.01F3.

[26] § 019.01F4 (emphasis supplied).

[27] See *Patterson, supra* note 20.

- 66 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

[13] Within the disturbance rule, the word "occur" appears only in § 019.01F4. Under the commission's interpretation, one would expect it to appear in § 019.01F. But it does not. As used in § 019.01F4, we understand it to support the ordinary and plain language of § 019.01F. Similarly, §§ 019.01F2 and 019.01F3 support the plain language of § 019.01F by requiring licensees to take reasonable action to terminate a disturbance. Again, logically, in order to terminate a disturbance, it must occur and continue. We hold that under § 019.01F, a licensee cannot be sanctioned for a violation unless the licensee has allowed an unreasonable disturbance to continue.

The State agreed with McManus that merely hosting an event is not a violation of § 019.01F. However, it contends that McManus violated the disturbance rule when

[McManus] agree[d] to host the event by opening its doors to a third party promotor and the promotor's security team over which [McManus] had no control, with knowledge that prior events by the same promotor had resulted in an "all call" for LPD, with no clear plan and adequate security tailored to the nature of the event and size of the expected "standing room only" crowd.[28]

The district court reasoned that McManus "violated the disturbance rule when it disregarded the security concerns expressed to it by law enforcement and proceeded with the event that placed the safety of the public at risk." Both interpretations relied upon the phrase "other activity which may endanger"[29] to craft a preventative interpretation of "other activity." This interpretation inconsistently read into the regulation a preventative consideration that does not appear within the explicit language of the regulation.

Under the plain language, a "disturbance" applies a present temporal meaning.[30] The rule utilizes the present tense

---

[28] Brief for appellee at 10.

[29] § 019.01F1.

[30] See *id.*

- 67 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
McMANUS ENTERS. v. NEBRASKA LIQUOR CONTROL COMM.
Cite as 303 Neb. 56

when defining disturbance and does not place any conditional language on the existence of the disturbance. For example, a disturbance shall mean any brawl which may endanger others or any fight which may endanger others. It would fly in the face of the plain and ordinary language to read all other disturbances as occurring in the present and "other activity which may endanger" as preventative or precognitive. Effectively, the district court's interpretation placed the proverbial cart before the horse when it placed the conditional language on the disturbance and not the consequences.

Moreover, the nonexhaustive list of examples of a "disturbance" in § 019.01F1—such as drug dealing, intoxicated individuals, soliciting prostitution, and physical contact between customers and employees or agents—further illustrates disturbances happening in the present. The list utilizes the present, present participle, and past tense to define disturbance. It does not place any conditional language on the existence of the disturbance.

[14] A licensee's hosting an event with awareness of a potential disturbance will not be considered a disturbance. Unlike the several other examples of disturbances listed above, hosting an event, in and of itself (at least under the disturbance rule as now written), does not put others in potential danger. Some other activity must occur, like the brawl that broke out, to place others in danger for it to be considered a disturbance under the existing language. In this case, the disturbance did not occur until 1:55 a.m., when the brawl took place. At that point, LPD officers were immediately involved. Therefore, under § 019.01F, in order for "other activity" to be a disturbance, the dangerous activity itself must arise and be of such a nature that may place others in danger.

Under the plain and ordinary meaning of the disturbance rule, McManus did not have to take reasonable action to terminate the disturbance until 1:55 a.m., when it occurred, at which point the duty under § 019.01F to "[not] allow any unreasonable disturbance . . . to continue" sprang into effect.

Because the district court found that McManus did not take reasonable action before the disturbance occurred, its interpretation was inconsistent with the plain language of § 019.01F. Accordingly, the district court's interpretation did not conform to the law, and we reverse.

Our holding does not preclude the commission from promulgating a preventative rule for disturbances. The problem is, the current rule simply does not do so.

## CONCLUSION

Under the plain and ordinary language, a licensee does not violate the disturbance rule until a disturbance has occurred. At that point, the duty to "not allow" the disturbance "to continue" becomes effective. Because the district court's analysis read into the regulation an interpretation inconsistent with the plain language, its decision did not conform to the law. We reverse the decision and remand the cause to the district court with directions to remand the matter to the commission with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.