278 Neb. 187
CHILDREN'S HOSPITAL, APPELLANT,
v.
STATE OF NEBRASKA, DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MEDICAID AND LONG-TERM CARE, APPELLEE.
No. S-08-1173.
Supreme Court of Nebraska.
Filed July 24, 2009.
James L. Quinlan and Kristin A. Crone, of Fraser Stryker, p.C., L.L.O., for appellant.
Jon Bruning, Attorney General, and Michael J. Rumbaugh for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
This case centers on a dispute between Children's Hospital (Children's), located in Omaha, Nebraska, and the Nebraska Department of Health and Human Services (DHHS) over reimbursements to Children's from the Nebraska Medical Assistance Program, also known as NMAP (Medicaid). The question presented by this appeal is whether the services provided to two Children's patients in the hospital's hematology/oncology clinic located in the "Scott Pavilion" are "hospital outpatient services," properly billed on "Form CM1450," or are physician clinic-type services, which should be billed on "Form CMS-1500." This distinction matters because Medicaid reimburses expenses for hospital services on a cost-to-charge percentage, while expenses for practitioner services are reimbursed via a fixed fee schedule. We conclude the district court employed an incorrect legal test in concluding that the services were physician clinic-type services. Accordingly, we reverse the decision and remand the cause to the district court with directions.

BACKGROUND

Scott Pavilion.
The Scott Pavilion is a four-story building located on the campus of Children's and is connected to the hospital via a lobby and a skywalk. The Scott Pavilion is owned and operated by Children's, and all nonphysician personnel providing treatment or support in this facility are employees of Children's. Children's provides all supplies necessary for treatment and evaluation of patients seen in the Scott Pavilion, and all patient care services delivered there are delivered under license of Children's. In addition, the patient care services delivered in the Scott Pavilion are subject to and governed by the Children's "Quality Assurance and Utilization Review Oversight." All outpatient services provided in the Scott Pavilion are surveyed and reviewed in connection with the accreditation of Children's by the "Joint Commission on Accreditation of Healthcare Organization," a national organization.

Patients and Procedures.
D.P. and E.M. are two pediatric patients who received medically necessary hematology or oncology services in the hematology/oncology clinic at the Scott Pavilion. No doctor was directly involved in the treatment of either D.P. or E.M. with respect to the services relevant to this appeal.
After providing services to D.P. and E.M., Children's billed Medicaid for the services on Form CMS-1450, which provides for the submission of claims for institutional services. With respect to D.P., certain claims were denied, at least in part, with the notation that "'[p]ayment [was] adjusted due to a submission/billing error(s).'" Other claims for laboratory work were paid as outpatient hospital services.
With respect to E.M., who received chemotherapy, DHHS denied certain claims, at least in part, again noting that "'[p]ayment [was] adjusted due to a submission/billing error(s)'" and further noting that Children's had used an "'[i]ncorrect claim form/format for this service.'" Still other claims were denied with DHHS noting that "`[p]ayment is denied when performed/billed by this type of provider'" and that "' [t]his provider type/provider specialty may not bill this service.'" As with D.P., claims for laboratory work were paid as outpatient hospital services.

Procedural History.
Following the denial of these claims and subsequent negotiations and discussions between the parties, Children's appealed the denials to DHHS under the Administrative Procedure Act. DHHS upheld the denials, and Children's appealed to the district court. The district court affirmed the decision of DHHS, concluding that the Scott Pavilion was properly classified as a "healthcare practitioner facility," which is excluded from the definition of the term "hospital," and that thus, the services delivered were not "hospital outpatient services." Children's appeals.

ASSIGNMENT OF ERROR
Children's assigns, restated and consolidated, that the district court erred in concluding that the hematology/oncology clinic at the Scott Pavilion delivered physician clinic-type, and not institutional/outpatient, services and that accordingly, Children's should have submitted its claims on Form CMS-1500, the form for practitioner services.

STANDARD OF REVIEW
[1] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[1]
[2] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[2]
[3] To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

ANALYSIS
The issue presented by this appeal is whether services delivered at the Scott Pavilion were outpatient or practitioner services and, accordingly, what form should be used for billing those services. Children's contends that these services were "hospital outpatient services" and billed DHHS for those services on Form CMS-1450, the form used by institutions. However, DHHS argues that the hematology/oncology clinic at the Scott Pavilion was a physician clinic and that Children's should have billed DHHS on Form CMS-1500, the form used by practitioners. The district court concluded that the Scott Pavilion was a "healthcare practitioner facility" and that services provided there should be billed on Form CMS-1500.
Underlying this litigation is a dispute between Children's and DHHS about the use of discretion by DHHS in considering these claims. Under 471 Neb. Admin. Code, ch. 10, § 10.09A (2003), DHHS may "review and reduce or deny payment for covered outpatient or emergency room drugs, supplies, or services which are readily obtainable from another provider . . . to the amount payable at the least expensive appropriate place of service." In its brief, Children's notes that "there may be situations where a service provided in the outpatient setting could have been provided in a physician's office and for which payment should be reduced, but [that] pediatric patients have special concerns, which should be evaluated on a case-by-case basis, as the regulation suggests," and that DHHS was "attempting to arbitrarily implement a blanket approach to classifying these services, an approach that ignores its own regulations and avoids a case-by-case analysis."[4]
We agree with Children's. As noted, we conclude that the district court employed an incorrect legal test in connection with its determination that the Scott Pavilion was a "healthcare practitioner facility" and that services there should be billed on Form CMS-1500.
Our analysis begins with the question of whether, in the cases of D.P. and E.M., Children's provided "hospital outpatient services." "Hospital outpatient services" are defined by Medicaid regulations as "[p]reventive, diagnostic, therapeutic, rehabilitative, or palliative services that are provided to outpatients under the direction of a physician or dentist in an institution that meets the standards for participation in 471 NAC 10-001."[5] These "standards for participation" are as follows:
To participate in [Medicaid], a hospital that provides hospital inpatient and/or outpatient/emergency room services must
1. Be maintained primarily for the care and treatment of patients with disorders other than mental disease;
2. Be licensed as a hospital by [DHHS] Regulation and Licensure or the officially designated authority for state standard-setting in the state where the hospital is located;
3. Have licensed and certified hospital beds; and
4. Meet the requirements for participation in Medicare and Medicaid.[6] And an "outpatient" is defined as "[a] person who has not been admitted as an inpatient but is registered on the hospital records as an outpatient and receives services."[7]
As an initial matter, we note that there is no dispute that Children's was providing "[p]reventive, diagnostic, therapeutic, rehabilitative, or palliative services . . . under the direction of a physician" at the hematology/oncology clinic at the Scott Pavilion and that Children's met all of the "standards for participation" set forth in the regulations. We note, however, that there is a dispute over whether D.P. and E.M. were outpatients.
The district court found there were "no records of any sort offered to establish that either of these patients w[as] ever registered by Children's as an outpatient." Our review of the record, however, demonstrates that while there was no specific indication on the records generated at the Scott Pavilion that D.P. and E.M. were outpatients, there was nevertheless other evidence to support such a finding. In particular, the records at issue included sections for "Discharge Planning" and "Discharge Orders." Further review of the record suggests that the inclusion of such sections would be indicative of either inpatient or outpatient care, but not necessarily clinic care. Moreover, a Children's official testified at the administrative hearing that both D.P. and E.M. were registered as outpatients. This testimony was uncontroverted. We therefore conclude that the district court's finding that there were no "records" to establish that D.P. and E.M. were outpatients is not supported by competent evidence and was erroneous.
Because Children's met all "standards for participation" and was providing "[p]reventive, diagnostic, therapeutic, rehabilitative, or palliative services" that are provided to outpatients under " the direction of a physician" at the hematology/oncology clinic at the Scott Pavilion, we conclude that Children's was providing "hospital outpatient services." We note that other than its finding that D.P. and E.M. were not outpatients, which we have concluded was erroneous, the district court found that the services provided at the Scott Pavilion met all the elements of the definition of "hospital outpatient services."
The district court further erred in its interpretation of the applicable regulations, specifically in the legal test it utilized. Instead of focusing on the question of whether the services provided by Children's met the definition of "hospital outpatient services," the district court focused on whether the services in question were actually being provided in a "healthcare practitioner facility." The district court considered the appearance of the facility and its medical records and concluded that it was a "healthcare practitioner facility."
We conclude that the district court erred as a matter of law by framing the issue presented in such a manner. In this instance, we are not concerned with the appearance of the facility or the nature of its medical records. The issue presented in this case is what form Children's should have utilized when billing Medicaid and, by extension, the exercise of discretion, or lack thereof, by DHHS in determining coverage for the services at issue. Thus, our concern is not with where the services were provided, but, instead, our concern lies with the nature of the services actually provided. And we have concluded that those services met the definition of "hospital outpatient services." Whether those services could have been delivered by a practitioner and thus properly billed on the practitioner form is a separate question.
Because the services in question met the definition of "hospital outpatient services," it was entirely appropriate for Children's to bill Medicaid for those services on Form CMS-1450. We note again that DHHS retains discretion under Medicaid regulations to "review and reduce or deny payment for covered outpatient or emergency room drugs, supplies, or services which are readily obtainable from another provider. . . to the amount payable at the least expensive appropriate place of service."[8] In this case, the claims were, at least in part, denied because they were filed on an incorrect form and not due to the exercise of any discretion on the part of DHHS. We therefore remand this cause to the district court with directions to remand to DHHS for a reconsideration of these claims.

CONCLUSION
We reverse the district court's decision and remand this cause to the district court with directions to remand to DHHS for a reconsideration of the claims.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Nothnagel v. Neth, 276 Neb. 95, 752 N.W.2d 149 (2008).
[2] Id.
[3] Upper Big Blue NRD v. State, 276 Neb. 612, 756 N.W.2d 145 (2008).
[4] Brief for appellant at 9.
[5] 471 Neb. Admin. Code, ch. 10, § 001.03 (2008).
[6] Id., § 001 (2003).
[7] Id., § 001.03.
[8] 471 Neb. Admin. Code, ch. 10, § 10.09A.