Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

IN RE ESTATE OF ELDON R. PSOTA, DECEASED.
SHARLENE PSOTA, APPELLANT, V. JAMES PSOTA AND
JANICE BROWN, COPERSONAL REPRESENTATIVES
OF THE ESTATE OF ELDON R. PSOTA,
DECEASED, APPELLEES.

___ N.W.2d ___

Filed August 25, 2017.    No. S-16-873.

1. **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
2. **Decedents' Estates: Judgments: Appeal and Error.** When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.
3. **Decedents' Estates: Contracts: Waiver.** Neb. Rev. Stat. § 30-2316 (Reissue 2016) applies when determining whether a surviving spouse has waived rights to the property or estate of a decedent spouse by signing a written contract, agreement, or waiver.
4. **Statutes: Legislature: Presumptions.** In enacting a statute, the Legislature must be presumed to have knowledge of all previous legislation upon the subject.
5. **Statutes: Legislature: Presumptions: Intent.** The Legislature is presumed to know the language used in a statute, and if a subsequent act on the same or similar subject uses different terms in the same connection, the court must presume that a change in the law was intended.
6. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.
7. **Decedents' Estates: Waiver: Proof.** Under the plain language of Neb. Rev. Stat. § 30-2316(b) (Reissue 2016), a surviving spouse must satisfy the requirements of both subsections (b)(1) and (b)(2) in order to prove a waiver signed by the surviving spouse is unenforceable.

Appeal from the County Court for Valley County: Alan L. Brodbeck, Judge. Affirmed.

Michael J. O'Bradovich, P.C., for appellant.

Mark L. Eurek, of Law Office of Mark L. Eurek, P.C., for appellee Janice Brown.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Stacy, J.

Sharlene Psota filed an application to be treated as an omitted spouse under a section of the Nebraska Probate Code[1] after her husband Eldon R. Psota made no provision for her in his will. The copersonal representatives of Eldon's estate resisted the application, arguing Sharlene waived all her rights to Eldon's estate in a prenuptial agreement. The probate court denied the application, and Sharlene filed this appeal. We affirm the decision of the probate court.

## FACTS

Sharlene and Eldon married on September 24, 2011. It was a second marriage for both parties, and each had children from a prior marriage. Approximately 1 week before their wedding, Eldon suggested a prenuptial agreement, and Sharlene agreed. Six days before the wedding, they met with an attorney selected by Eldon. A few days later, they met with the attorney again and reviewed a draft prenuptial agreement. Sharlene requested revisions to the agreement, which the attorney incorporated. They returned to the attorney's office the day before their wedding and signed the final agreement.

As pertinent to the issues on appeal, the agreement recited that "both parties are desirous of completely and absolutely disclaiming any right of inheritance or any interest of any

---

[1] See Neb. Rev. Stat. § 30-2320 (Reissue 2016).

nature whatsoever in and to the property of the other party that was accumulated prior to their forthcoming marriage." It further provided that "each party has made frank and full disclosure each to the other of all property of every nature whatsoever that they now hold." The agreement provided that each party "absolutely and completely" disclaimed "any interest of any nature whatsoever" that he or she had in the real and personal property of the other and acknowledged that "full and complete disclosure" had been made of all property owned by the other.

The agreement recited that attached as "Exhibit 'A'" was Eldon's "statement of the property" and his "most recent income tax return," and attached as "Exhibit 'B'" was Sharlene's statement of property and most recent income tax return. Both exhibits were attached to the agreement and contained lists of each party's real property, without any valuations. Neither exhibit listed any personal property, and no income tax returns were attached. With respect to the property disclosures, the agreement provided: "Each party understands that said [property] statements are made in general terms, and that each party does agree and acknowledge that [he or she does], in fact, have personal knowledge of the full extent of the other's property, and that said [property lists] are only representative in nature." The agreement further stated that each party

> shall have the right to dispose of [his or her] entire estate and each does waive any and all interest of any nature whatsoever upon the estate of the other, and each specifically waives herein a spouse's elective share, homestead allowance, exempt allowance, family allowance, augmented estate, and all testate and intestate rights.

Eldon died in August 2013. His will, executed approximately 8 years before his marriage to Sharlene, did not leave anything to her. The inventory of Eldon's estate contained approximately $10 million in assets, the bulk of which related to the real property he owned.

In November 2015, Sharlene filed an application to be treated as an omitted spouse under Neb. Rev. Stat. § 30-2320 (Reissue 2016). That statute provides that if a testator fails to provide by will for a surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he or she would have received if the decedent had left no will.[2] The statute also provides that the rights of the omitted spouse can be "waived pursuant to section 30-2316."[3] Neb. Rev. Stat. § 30-2316 (Reissue 2016) allows a surviving spouse to waive the right of election "by a written contract, agreement, or waiver signed by the surviving spouse" either before or after the marriage.

Eldon's estate resisted Sharlene's application, arguing she waived her rights to Eldon's estate in the prenuptial agreement. After holding an evidentiary hearing at which Sharlene testified and the prenuptial agreement was admitted into evidence, the county court found the prenuptial agreement was valid under § 30-2316. It held that Sharlene had waived the right to take as an omitted spouse, and denied her application for share of an omitted spouse. Sharlene filed this timely appeal, which we moved to our docket.[4]

## ASSIGNMENTS OF ERROR

Sharlene assigns, restated and consolidated, that the trial court erred in (1) finding she was aware of the value of Eldon's real property, when it was not valued in the prenuptial agreement; (2) finding she should have known the value of Eldon's estate when the prenuptial did not list his personal property or contain his tax returns; and (3) finding the prenuptial agreement was enforceable when it failed to meet several statutory requirements on its face.

---

[2] *Id.*

[3] § 30-2320(a).

[4] Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## STANDARD OF REVIEW

[1] An appellate court reviews probate cases for error appearing on the record made in the county court.[5]

[2] When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.[6]

## ANALYSIS

### Statutory Background

The probate court concluded the prenuptial agreement was an enforceable waiver of Sharlene's statutory right to receive a share of Eldon's estate as an omitted spouse. Sharlene argues the waiver was unenforceable under § 30-2316(b) for a variety of reasons. We begin our analysis with a review of the governing statute.

[3] Section 30-2316 applies when determining whether a surviving spouse has waived rights to the property or estate of a decedent spouse by signing a written contract, agreement, or waiver. Under that statute:

(b) A surviving spouse's waiver is not enforceable if the surviving spouse proves that:

(1) he or she did not execute the waiver voluntarily;

(2) the waiver was unconscionable when it was executed and, before execution of the waiver, he or she:

(i) was not provided a fair and reasonable disclosure of the property or financial obligations of the decedent;

(ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the decedent beyond the disclosure provided; and

(iii) did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the decedent.

---

[5] *In re Estate of Pluhacek*, 296 Neb. 528, 894 N.W.2d 325 (2017).

[6] *Id.*

A similar statute, Neb. Rev. Stat. § 42-1006 (Reissue 2016), governs the enforceability of premarital agreements generally, and most often is applied in proceedings for the dissolution of marriage.[7] Section 42-1006 provides in pertinent part:

> (1) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:
>
> (a) That party did not execute the agreement voluntarily; or
>
> (b) The agreement was unconscionable when it was executed and, before execution of the agreement, that party:
>
> (i) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
>
> (ii) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
>
> (iii) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

Because the language and purpose of the two statutes is similar, case law interpreting and applying § 42-1006(1) will generally be instructive when interpreting and applying § 30-2316. However, there is one notable difference between the two statutes: § 42-1006(1) contains the connector "or" between subsections (a) and (b), but § 30-2316(b) has no connector between subsections (1) and (2). Eldon's estate argues that this statutory difference is significant and impacts Sharlene's burden of proof in this case. We agree.

In *Mamot v. Mamot*,[8] we considered the Legislature's inclusion of the term "or" in § 42-1006(1)(a), and we held that

---

[7] See, *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012); *Edwards v. Edwards*, 16 Neb. App. 297, 744 N.W.2d 243 (2008).

[8] *Mamot v. Mamot, supra* note 7.

those seeking to prove a premarital agreement is unenforceable have the burden of proving "*either* that [he or] she did not voluntarily execute the premarital agreement *or* that the premarital agreement was unconscionable when it was executed."[9]

The present case requires us to determine whether the absence of the term "or" between § 30-2316(b)(1) and (2) is significant as it regards the burden of proof. Restated, the question is whether a surviving spouse must satisfy *both* subsections (b)(1) and (b)(2) of § 30-2316 to prove that a waiver signed by the surviving spouse is unenforceable.

[4,5] We note that §§ 30-2316(b) and 42-1006(1) were enacted by the Legislature in the same bill.[10] In enacting a statute, the Legislature must be presumed to have knowledge of all previous legislation upon the subject.[11] The Legislature is also presumed to know the language used in a statute, and if a subsequent act on the same or similar subject uses different terms in the same connection, the court must presume that a change in the law was intended.[12]

We presume the Legislature, having enacted §§ 30-2316 and 42-1006 as part of the same bill, was fully cognizant of the language used, and easily could have included the term "or" in both statutes when setting forth the evidence required to prove an agreement is unenforceable. It instead included "or" between subsections (1)(a) and (b) in § 42-1006, but omitted any connector between subsections (b)(1) and (2) in § 30-2316.

[6] During oral argument, Sharlene urged this court to read the term "or" into § 30-2316(b)(1) and apply the same burden of proof under both statutes. But it is not within the province

---

[9] *Id.* at 664-65, 813 N.W.2d at 446 (emphasis in original).

[10] See 1994 Neb. Laws, L.B. 202.

[11] *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[12] *Id.*

of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[13]

[7] We decline the invitation to read into § 30-2316(b) language which the Legislature plainly omitted. We instead hold that under the plain language of § 30-2316(b), a surviving spouse must satisfy the requirements of *both* subsections (b)(1) and (b)(2) in order to prove a waiver signed by the surviving spouse is unenforceable. We next consider whether the probate court erred in finding Sharlene did not meet this burden of proof.

## Voluntariness of Execution

Under § 30-2316(b)(1), Sharlene had the burden to prove she "did not execute the waiver voluntarily." The probate court implicitly found she failed to meet this burden and concluded she "knowingly and voluntarily entered" into the waiver. Sharlene does not assign error to this finding, and her brief concedes that she "does not deny that she went to the office of the attorney and signed the Agreement voluntarily."[14] However, Sharlene's briefing urges us to adopt a definition of "voluntarily" which includes consideration of factors beyond the execution of the agreement.

We have never addressed what "voluntarily" means in the context of § 30-2316(b)(1). The statute does not define the term. Black's Law Dictionary defines "voluntarily" as "[i]ntentionally; without coercion."[15] In *Edwards v. Edwards*,[16] the Nebraska Court of Appeals considered the meaning of "voluntarily" in the context of a dissolution case where the wife

---

[13] *State v. Warriner*, 267 Neb. 424, 675 N.W.2d 112 (2004); *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

[14] Brief for appellant at 13.

[15] Black's Law Dictionary 1806 (10th ed. 2014).

[16] *Edwards v. Edwards, supra* note 7.

challenged the enforceability of a premarital agreement under § 42-1006(1). That court found instructive a five-factor test developed by a California court under the Uniform Premarital Agreement Act. We considered the same five-factor test in *Mamot v. Mamot*,[17] observing that "[t]he California court identified the following factors that a court might consider":

(1) "coercion that may arise from the proximity of execution of the agreement to the wedding, or from surprise in the presentation of the agreement";

(2) "the presence of absence of independent counsel or of an opportunity to consult independent counsel";

(3) "inequality of bargaining power—in some cases indicated by the relative age and sophistication of the parties";

(4) "whether there was full disclosure of assets"; and

(5) the parties' understanding of the "rights being waived under the agreement or at least their awareness of the intent of the agreement."[18]

Here, Sharlene concedes she "went to the office of the Attorney and signed the agreement voluntarily."[19] Her brief asserts, however, that "voluntariness" under § 30-2316(b) requires "more than intentionally affixing one's name to a document"[20] and instead involves an application of all five *Edwards*/*Mamot* factors. Essentially, she invites this court to apply the *Edwards*/*Mamot* analysis to cases governed by § 30-2316. We decline this invitation for two reasons.

First, we note the *Edwards*/*Mamot* factors examine not only the procedural aspects of executing the agreement, but also

---

[17] *Mamot v. Mamot, supra* note 7.

[18] *Id.* at 665-66, 813 N.W.2d at 447, quoting *In re Marriage of Bonds*, 24 Cal. 4th 1, 5 P.3d 815, 99 Cal. Rptr. 2d 252 (2000) (superseded by statute as stated in *In re Marriage of Cadwell-Faso and Faso*, 191 Cal. App. 4th 945, 119 Cal. Rptr. 3d 818 (2011)).

[19] Brief for appellant at 13.

[20] *Id.*

the substantive terms of the agreement regarding the full disclosure of assets. In that respect, the *Edwards*/*Mamot* factors tend to combine the separate elements of proof required under § 30-2316(b)(1) and (2), and frustrate judicial determination of whether both statutory requirements have been proved.

More directly, Sharlene does not explain in her brief to this court how application of the *Edwards*/*Mamot* factors would show the probate court erred in finding that her waiver was voluntarily executed. She makes no attempt to explain how the evidence relates to the individual factors or suggest any error in the probate court's reasoning or analysis.

On the record before us, Sharlene has not established that the probate court erred in finding she executed the waiver voluntarily. Having failed to prove she did not execute the waiver voluntarily under § 30-2316(b)(1), she cannot meet her burden of proving the waiver was unenforceable. For this reason, we need not reach her arguments as to the unconscionability of the waiver under § 30-2316(b)(2), as an appellate court need not engage in an analysis not necessary to resolve the appeal.[21]

## CONCLUSION

Finding no error in the probate court's conclusion that Sharlene executed the waiver voluntarily, we affirm that court's decision denying her application to take as an omitted spouse.

AFFIRMED.

---

[21] See *In re Conservatorship of Abbott*, 295 Neb. 510, 890 N.W.2d 469 (2017).