Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/28/2020 09:09 AM CDT

- 20 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

J.S, appellant, v. Nebraska Department
of Health and Human Services
et al., appellees.
___ N.W.2d ___

Filed June 5, 2020.    No. S-18-1149.

1. **Public Assistance: Words and Phrases.** For the purposes of state or local public benefits eligibility under Neb. Rev. Stat. § 4-108 (Reissue 2012), "lawfully present" means the alien classifications under 8 U.S.C. § 1621(a)(1), (2), and (3) (2012).

2. **Public Assistance: Legislature.** In order to affirmatively provide a state public benefit to aliens not lawfully present in the United States, as authorized by 8 U.S.C. § 1621(d) (2012), the Legislature must make a positive or express statement extending eligibility by reference to immigration status.

3. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

4. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

5. **Administrative Law: Judgments.** Whether an agency decision conforms to the law is by definition a question of law.

6. **Administrative Law: Statutes: Appeal and Error.** The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

7. **Medical Assistance: Federal Acts: States.** The Medicaid program provides joint federal and state funding of medical care for individuals

- 21 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

whose resources are insufficient to meet the cost of necessary medical care.

8. ____: ____: ____. A state is not obligated to participate in the Medicaid program; however, once a state has voluntarily elected to participate, it must comply with standards and requirements imposed by federal statutes and regulations.

9. **Administrative Law: Statutes.** For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.

10. ____: ____. Properly adopted and filed regulations have the effect of statutory law.

11. **Administrative Law.** Absent a statutory or regulatory indication to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning.

12. **Federal Acts: Words and Phrases.** In interpreting federal statutes, the word "may" customarily connotes discretion. That connotation is particularly apt where "may" is used in contraposition to the word "shall."

13. **Statutes: Words and Phrases.** The word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective.

14. **Medical Assistance: Federal Acts: States.** Because Nebraska did not elect to extend coverage under 42 U.S.C. § 1396b(v)(4)(A) (2018) beyond age 18, neither the Children's Health Insurance Program nor the former foster care provisions of the Patient Protection and Affordable Care Act provide coverage where a noncitizen applicant's immigration status is not qualified.

15. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

16. **Statutes: Words and Phrases.** It is not for the courts to supply missing words or sentences to a statute to supply that which is not there.

17. **Statutes: Legislature: Presumptions.** In enacting a statute, the Legislature must be presumed to have knowledge of all previous legislation upon the subject.

18. ____: ____: ____. The Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.

19. **Constitutional Law.** Nebraska's separation of powers clause prohibits the three governmental branches from exercising the duties and prerogatives of another branch.

- 22 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

20. \_\_\_\_. The separation of powers clause prevents a branch from delegating its own duties or prerogatives except as the constitution directs or permits.
21. **Constitutional Law: Legislature: Courts: Appeal and Error.** The Nebraska Supreme Court does not sit as a superlegislature to review the wisdom of legislative acts; that restraint reflects the reluctance of the judiciary to set policy in areas constitutionally reserved to the Legislature's plenary power.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Allison Derr, Robert McEwen, and Sarah Helvey, of Nebraska Appleseed Center for Law in the Public Interest, for appellant.

Douglas J. Peterson, Attorney General, and Ryan C. Gilbride for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

# I. INTRODUCTION

In *E.M. v. Nebraska Dept. of Health & Human Servs.* (*E.M.*),[1] we held that legislation[2] creating the bridge to independence program (B2I)[3] did not "affirmatively provide[]"[4] eligibility to noncitizen applicants who were not "lawfully present."[5] In this Administrative Procedure Act[6] appeal, J.S.,

---

[1] *E.M. v. Nebraska Dept. of Health & Human Servs., ante* p. \_\_\_, \_\_\_ N.W.2d \_\_\_ (2020).

[2] See Neb. Rev. Stat. §§ 43-4501 to 43-4514 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019) (Young Adult Bridge to Independence Act).

[3] See § 43-4503(1).

[4] See 8 U.S.C. § 1621(d) (2012).

[5] See *id*.

[6] See Neb. Rev. Stat. §§ 84-901 to 84-920 and 84-933 to 84-948 (Reissue 2014 & Cum. Supp. 2018).

- 23 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

a noncitizen who was admitted into B2I, challenges the district court's judgment affirming a state agency's denial of Medicaid[7] eligibility after she reached age 19. Essentially, we must decide whether the statutes or regulations she cites authorized her participation despite her immigration status and age. Because they did not, we affirm the judgment.

## II. BACKGROUND

### 1. B2I

In *E.M.*,[8] we briefly introduced B2I, Nebraska's extended foster care program, which was created by the Young Adult Bridge to Independence Act (YABI).[9] In this appeal, we rely upon that description.

### 2. PRWORA and L.B. 403

Similarly, in *E.M.*,[10] we extensively discussed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA)[11] and its Nebraska counterpart.[12] As we explained there, PRWORA declared certain individuals to be ineligible for any state public benefit.[13] Like PRWORA's prohibition on federal public benefits,[14] its proscription on state public benefits applies "[n]otwithstanding any other provision of law"[15] but with specified exceptions.[16]

[1,2] There, we focused on the exception created by § 1621(d), which authorized a State to make an "alien who is

---

[7] See Neb. Rev. Stat. § 68-903 (Reissue 2018) (medical assistance program "shall also be known as [M]edicaid").

[8] *E.M., supra* note 1.

[9] See §§ 43-4501 to 43-4514.

[10] *E.M., supra* note 1.

[11] Pub. L. No. 104-193, § 1, 110 Stat. 2105.

[12] See Neb. Rev. Stat. §§ 4-108 to 4-113 (Reissue 2012 & Cum. Supp. 2018).

[13] See § 1621(a).

[14] See 8 U.S.C. § 1611 (2012).

[15] § 1621(a).

[16] See § 1621(b) and (d).

- 24 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

not lawfully present in the United States" eligible for a State public benefit by enactment of a State law which "affirmatively provides for such eligibility." First, we determined that for the purposes of state or local public benefits eligibility under § 4-108, "lawfully present" means the alien classifications under § 1621(a)(1), (2), and (3).[17] Second, we held that in order to affirmatively provide a state public benefit to aliens not lawfully present in the United States, as authorized by § 1621(d), the Legislature must make a positive or express statement extending eligibility by reference to immigration status.[18]

### 3. J.S. AND DHHS

J.S. is a citizen of El Salvador, who fled to Nebraska as a minor. She was adjudicated in juvenile court[19] and placed into foster care. At the time she applied to the Nebraska Department of Health and Human Services (DHHS) for B2I, she had a pending application for special immigrant juvenile (SIJ) status. Upon turning 19 years old, J.S. was accepted into B2I but was denied Medicaid coverage after her 19th birthday.

She requested a fair hearing with DHHS. At the hearing, the parties presented evidence and made arguments. In DHHS' order, it found that she did not meet "the basic requirement[s] of 'citizenship or alien status' required for all Medicaid recipients." It upheld the denial of Medicaid benefits.

### 4. DISTRICT COURT

J.S. filed a timely petition for review in the district court. She argued that she was eligible for Medicaid under the Children's Health Insurance Program (CHIP)[20] and former foster care.[21]

---

[17] *E.M., supra* note 1.

[18] *Id.*

[19] See Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016).

[20] See Neb. Rev. Stat. § 68-969(2)(a) (Reissue 2018) ("CHIP means the Children's Health Insurance Program established pursuant to 42 U.S.C. [§] 1397aa et seq.").

[21] See 42 U.S.C. § 1396a(a)(10)(A)(i)(IX) (2018).

- 25 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

She also contended that B2I extended medical assistance to all young adults regardless of immigration status.

The district court disagreed that CHIP or former foster care supported Medicaid eligibility. The court reasoned: Congress allowed the states to provide Medicaid benefits to certain lawfully residing alien children under CHIP, a state could elect to extend benefits to individuals under 21 years old (and pregnant women) who are "lawfully residing" aliens,[22] but Nebraska chose to limit CHIP to children under 19 years old (and pregnant women). Thus, the court concluded that even though J.S. was considered lawfully residing as defined by CHIP regulations, she exceeded the age limitation when she reached her 19th birthday.

The court then considered whether J.S. could receive Medicaid under B2I. That program provides several services to participants, including "[m]edical care under the medical assistance program for young adults who met the eligibility requirements of [§] 43-4504 and have signed a voluntary services and support agreement as provided in [§] 43-4506."[23] The court acknowledged that § 1621(a) declared aliens who are not qualified aliens, nonimmigrants, or paroled into the United States for less than 1 year ineligible for State or local public benefits. And the court recognized that § 1621(d) authorized an exception where a state law affirmatively provided for such eligibility. The court concluded that because the Nebraska Legislature did not affirmatively provide for unlawful aliens to receive Medicaid benefits under B2I, J.S. was not entitled to Medicaid benefits. The court noted that whether J.S. should have been accepted into B2I was not before the court.

The court affirmed DHHS' denial of Medicaid benefits. J.S. filed a timely appeal, and we later granted her petition to bypass the Nebraska Court of Appeals.[24]

---

[22] See 42 U.S.C. § 1396b(v)(4)(A) (2018).

[23] § 43-4505(1).

[24] See Neb. Ct. R. App. P. § 2-102(B) (rev. 2015).

### III. ASSIGNMENTS OF ERROR

J.S. assigns, reordered, that the district court erred in (1) affirming DHHS' denial of Medicaid benefits, (2) determining that citizenship or immigration status was relevant to eligibility for medical coverage for participants in B2I, and (3) failing to determine that DHHS' practice of denying medical coverage to participants in B2I due to alien status violated the separation of powers clause of the Nebraska Constitution.

### IV. STANDARD OF REVIEW

[3-5] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[25] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[26] Whether an agency decision conforms to the law is by definition a question of law.[27]

[6] The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[28]

### V. ANALYSIS

#### 1. Medicaid Participation

[7,8] The Medicaid program provides joint federal and state funding of medical care for individuals whose resources are insufficient to meet the cost of necessary medical care.[29] A

---

[25] *McManus Enters. v. Nebraska Liquor Control Comm.*, 303 Neb. 56, 926 N.W.2d 660 (2019).

[26] *Id*.

[27] *Id*.

[28] *In re Application No. OP-0003*, 303 Neb. 872, 923 N.W.2d 653 (2019).

[29] *In re Estate of Vollmann*, 296 Neb. 659, 896 N.W.2d 576 (2017).

- 27 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

state is not obligated to participate in the Medicaid program; however, once a state has voluntarily elected to participate, it must comply with standards and requirements imposed by federal statutes and regulations.[30]

DHHS concedes that Nebraska has "elected to participate in the Medicaid program"[31] through enactment of the Medical Assistance Act.[32] But it argues that it properly determined J.S. was not eligible under the applicable statutes and regulations.

Challenging the district court's judgment affirming DHHS' denial of Medicaid eligibility, J.S. makes three arguments: First, she argues that neither CHIP nor former foster care conditions Medicaid eligibility on immigration status. Second, she contends that B2I extends Medicaid coverage to all young adults in B2I and that although she would be ineligible for federal matching funds, the State should furnish medical care with state funds only. Finally, she asserts that DHHS' practice of denying Medicaid to unlawful aliens participating in B2I violated the separation of powers clause of the Nebraska Constitution.[33]

We note that in this court, as in the court below, the parties do not question J.S.' participation in B2I; they contest only her eligibility for Medicaid benefits. Therefore, we are concerned only with whether J.S. is eligible for Medicaid under the Medical Assistance Act and § 43-4505(1).

Before turning to the arguments, we note that we will refer to the "Medicaid state plan."[34] This is a "comprehensive written document, developed and amended by [DHHS] and approved by the federal Centers for Medicare and Medicaid Services, which describes the nature and scope of the medical assistance program and provides assurances that [DHHS]

---

[30] *Id.*

[31] Brief for appellee at 20-21.

[32] See Neb. Rev. Stat. §§ 68-901 to 68-994 (Reissue 2018 & Supp. 2019).

[33] See Neb. Const. art. II, § 1.

[34] See § 68-907(4).

- 28 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

will administer the program in compliance with federal requirements."[35]

## 2. Medicaid Eligibility Via CHIP or Former Foster Care

J.S. concedes that PRWORA "generally restricts immigrants' rights to receive federal, state, and local public benefits," that it "limits the receipt of federally reimbursed Medicaid to only U.S. citizens or 'qualified aliens,'" and that it "imposes a five-year waiting period," which, in combination, effectively permits noncitizens, nonqualified aliens, and qualified aliens subject to the waiting period to "only receive medical coverage for the treatment of emergency medical conditions, even as to children and pregnant women."[36]

Nevertheless, J.S. argues that she was eligible for Medicaid under CHIP and former foster care. Before addressing her specific arguments, we review the regulations adopted by DHHS to administer the Medicaid program in Nebraska.

### (a) DHHS Regulations

[9-11] The Medical Assistance Act requires DHHS to "administer the [Medicaid] program"[37] and empowers it to "adopt and promulgate rules and regulations."[38] For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.[39] Properly adopted and filed regulations have the effect of statutory law.[40] Absent a statutory or regulatory indication to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning.[41] DHHS' regulations governing

---

[35] *Id.*

[36] Brief for appellant at 14, 15.

[37] § 68-908(1).

[38] § 68-908(2).

[39] *McManus Enters., supra* note 25.

[40] *Id.*

[41] *Id.*

- 29 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

Medicaid eligibility are codified in title 477 of the Nebraska Administrative Code.

J.S. did not meet Medicaid's primary eligibility requirements under title 477. One "Primary Eligibility Requirement[]" is "U.S. citizenship or alien status."[42] "In order to be eligible for Medicaid, an individual's status must be documented as one of the following . . . [a] citizen of the United States; [or a] Qualified Alien[] . . . ."[43] Within this regulation, a numbered list from 2 to 4 specifies criteria for an "individual's status,"[44] but none apply to J.S.

Despite not meeting the primary eligibility requirements, J.S. contends that she is eligible for Medicaid, because, she argues, a "lawfully present" child exception applied under both CHIP and former foster care. We examine each category in turn.

(b) CHIP

"CHIP means the Children's Health Insurance Program established pursuant to 42 U.S.C. [§] 1397aa et seq."[45] A regulation in effect at the time of J.S.' application and the proceedings below stated, in relevant part, as follows: "Children's Health Insurance Program (CHIP): Children age 18 or younger . . . are eligible for CHIP . . . ."[46]

J.S. argues that in 2009, "Congress created an exception to PRWORA in its enactment of [§] 214"[47] of the Children's Health Insurance Program Reauthorization Act of 2009 (CHIPRA).[48] The federal statute, as codified, states, "A State may elect (in a plan amendment under this subchapter) to

---

[42] See 477 Neb. Admin. Code, ch. 2, § 001 (2014).

[43] 477 Neb. Admin. Code, ch. 5, § 001 (2014).

[44] *Id*.

[45] § 68-969(2).

[46] 477 Neb. Admin. Code, ch. 18, § 003.01 (2014).

[47] Brief for appellant at 15.

[48] Pub. L. No. 111-3, § 1, 123 Stat. 8.

- 30 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

provide medical assistance . . . , notwithstanding [specified sections of PRWORA], to children . . . who are lawfully residing in the United States . . . , within . . . the following eligibility categor[y]: . . . (ii) . . . Individuals under 21 years of age . . . ."[49]

[12,13] But, as the district court correctly determined, § 1396b(v)(4)(A) was permissive and not mandatory, and Nebraska did not extend Medicaid eligibility under § 1396b(v)(4)(A) beyond those persons age 18 years and younger. In interpreting federal statutes, the word "may" customarily connotes discretion. That connotation is particularly apt where "may" is used in contraposition to the word "shall."[50] Similarly, we have said: The word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective.[51] Here, the word "may" afforded the State a choice: to "elect" or not.[52] As DHHS points out, the age of majority in Nebraska is 19.[53] Although the age-of-majority statute has been amended twice since the proceedings below, neither amendment applies here.[54] DHHS argues, "In its Medicaid State Plan, the State of Nebraska chose to limit such eligibility to lawfully residing children under [age 19]."[55] And J.S. concedes that DHHS "correctly point[s] out that although Nebraska elected to provide Medicaid to lawfully residing children through [§] 214, it only elected to do so in its State Plan up to age nineteen, rather than twenty-one."[56]

---

[49] § 1396b(v)(4)(A) (emphasis omitted).

[50] See *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005).

[51] *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016).

[52] See § 1396b(v)(4)(A).

[53] See Neb. Rev. Stat. § 43-2101 (Reissue 2016).

[54] See, 2018 Neb. Laws, L.B. 982, § 1; 2019 Neb. Laws, L.B. 55, § 5.

[55] Brief for appellee at 26.

[56] Reply brief for appellant at 4.

- 31 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

CHIP provides no support for J.S.' claim. J.S. was 19 years old when she was denied Medicaid. Once she reached age 19, she was no longer eligible for Medicaid under CHIP. We now turn to her argument regarding former foster care.

### (c) Former Foster Care

J.S. argues that DHHS "must provide coverage to all eligible individuals under mandatory categories of the federal Medicaid program, including the Former Foster Care Category"[57] of the Patient Protection and Affordable Care Act (ACA).[58] She cites the eligibility criteria of § 1396a(a)(10)(A)(i)(IX), including age, enrollment status, having been in foster care, and having been enrolled in a state plan or under a waiver of a plan while in foster care. She argues, "Aside from her citizenship status, it is undisputed that [she] met all of the basic eligibility requirements . . . ."[59] She then argues that "under [§] 214 of CHIPRA, she became entitled to receive Medicaid under the Former Foster Care Category."[60]

DHHS responds that because J.S. was not a U.S. citizen or qualified alien, she did not qualify as a former foster care child under § 1396a(a)(10)(A)(i)(IX) after she reached the age of majority, i.e., age 19. "Under the former foster care child exemption," DHHS argues, "[J.S.] still must meet the basic eligibility requirements, including [U.S.] citizenship or eligible alien status."[61] DHHS then argues that although the State could have elected under CHIPRA to provide federal Medicaid to pending SIJ applicants under age 21, it did not do so in its Medicaid state plan.

In reply, J.S. concedes that DHHS is "correct in saying 'Nebraska is not required to provide federal Medicaid to [SIJ

---

[57] Brief for appellant at 21.

[58] See Pub. L. No. 111-148, § 1, 124 Stat. 119.

[59] Brief for appellant at 21.

[60] *Id.* at 22.

[61] Brief for appellee at 26.

- 32 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

status] applicants under the age of 21.'"[62] And thereafter, her argument rests solely on YABI. Thus, she implicitly concedes that § 1396b(v)(4)(A)—the codification of § 214 of CHIPRA[63]—does not by itself overcome her immigration status after age 19. It could not do so, DHHS correctly argues, because Nebraska did not elect to extend medical assistance under § 1396b(v)(4)(A) past age 18.

At the fair hearing before DHHS, one of the exhibits received without objection purported to be a response from the federal Centers for Medicare and Medicaid Services, responding to a Nebraska inquiry. The answer stated, in relevant part, "[f]ormer foster children who are age 19 or older and have an immigration status that is considered lawfully present but is **not** considered to be 'qualified' would not be eligible for full Medicaid coverage, unless the individual was a pregnant woman." This merely confirms J.S.' implicit concession.

[14] In summary, because Nebraska did not elect to extend coverage under § 1396b(v)(4)(A) beyond age 18, neither CHIP nor the former foster care provisions of the ACA provide coverage where a noncitizen applicant's immigration status is not qualified. We now turn to J.S.' argument based on YABI.

### 3. Medicaid Eligibility Via B2I Under YABI

In *E.M.*,[64] we addressed YABI and B2I, which extend services and support to former foster youth who are between 19 and 21 years old.[65] But, here, we must specifically consider § 43-4505(1), which we did not address directly in *E.M.* Under § 43-4505, "[e]xtended services and support provided under [B2I] include, but are not limited to: (1) Medical care

---

[62] Reply brief for appellant at 4.

[63] Pub. L. No. 111-3, § 214, 123 Stat. 56.

[64] *E.M., supra* note 1.

[65] See §§ 43-4504 and 43-4505.

- 33 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

under the medical assistance program for young adults who meet the eligibility requirements of section 43-4504 and have signed a voluntary services and support agreement as provided in section 43-4506."

### (a) Principles of Statutory
### Interpretation

[15,16] The same principles of statutory interpretation we employed in *E.M.* apply here. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[66] It is not for the courts to supply missing words or sentences to a statute to supply that which is not there.[67]

### (b) PRWORA Applies to YABI

In *E.M.*, we reached several conclusions that direct our reasoning here: (1) PRWORA and its Nebraska equivalent apply to B2I, (2) YABI could not be extended by omission to aliens not lawfully present in the United States, (3) PRWORA instead required a positive or express statement by reference to immigration status, and (4) YABI lacks any such statement.[68]

J.S. raises two arguments identical to contentions rejected in *E.M.* Once again, neither is persuasive.

First, she says that YABI "makes no mention of citizenship as a prerequisite to receiving medical care within extended foster care" and that neither §§ 43-4504 or 43-4505(1) "limit the availability . . . to non-qualified aliens, or give deference to PRWORA."[69] But this is merely the "omission" argument that we rejected in *E.M.* There, we held, the omission of a lawful presence requirement in YABI did not qualify as a positive

---

[66] *JB & Assocs. v. Nebraska Cancer Coalition*, 303 Neb. 855, 932 N.W.2d 71 (2019).

[67] *State v. Jedlicka, ante* p. 52, 938 N.W.2d 854 (2020).

[68] See *E.M., supra* note 1.

[69] Brief for appellant at 18.

- 34 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

or express statement extending eligibility by reference to immigration status.[70]

Second, J.S. points to the same case management service[71] we addressed in *E.M.* There, we observed that this subsection describes a service and not a recipient eligible by immigration status. Under PRWORA, in order for a noncitizen not "lawfully present" to receive a state public benefit, the Legislature was required to "affirmatively provide[]" for such eligibility.[72] In rejecting the same argument there, we observed that no such statement appeared anywhere in YABI. Here, as we did in *E.M.*, we decline to supply words left out by the Legislature.

### (c) § 43-4505(1)

To escape the reach of PRWORA, J.S. argues that the "passage of [YABI] constituted a '[m]aterial change[] in State law' requiring [DHHS] to amend its State Plan to carry out the Legislature's mandate to provide medical care to all children within B2I," including noncitizens having pending SIJ applications.[73] This argument relies upon a federal regulation, which states, "The [Medicaid state] plan must provide that it will be amended whenever necessary to reflect . . . (ii) Material changes in State law . . . ."[74]

DHHS responds that the passage of YABI did not require the State to amend its Medicaid state plan. Instead, DHHS contends that YABI must be read in conjunction with PRWORA[75] and its Nebraska counterpart.[76] DHHS points out that YABI does not affirmatively provide for Medicaid coverage to

---

[70] See *E.M., supra* note 1.

[71] See § 43-4505(3)(h).

[72] See § 1621(d).

[73] Brief for appellant at 17.

[74] 42 C.F.R. § 430.12(c)(1)(ii) (2010).

[75] See § 1621(d).

[76] See § 4-108.

- 35 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

a noncitizen who is not "lawfully present" as defined by PRWORA. And DHHS suggests that the Legislature was familiar with these prior statutes. We agree with DHHS.

[17,18] In enacting a statute, the Legislature must be presumed to have knowledge of all previous legislation upon the subject.[77] The Legislature is also presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.[78] And, as we recognized in *E.M.*, the Legislature knows how to affirmatively provide for noncitizens to receive public benefits.[79]

Section 43-4505 first came into law in 2013.[80] It was amended in 2014[81] and 2015.[82] In none of this legislation was there any language affirmatively providing for public benefits to noncitizens. And although each of these legislative acts directed DHHS to submit plan amendments,[83] J.S. has not pointed to anything in these plan amendments or associated federal statutes excepting B2I from PRWORA or § 4-108.

Moreover, J.S.' argument claiming that § 43-4505 was a material change in state law would duplicate the former foster care category and conflict with the ACA. In 2010, the ACA required the States to provide Medicaid coverage to youth who have aged out of foster care until they turn 26 years old.[84]

---

[77] *In re Estate of Psota*, 297 Neb. 570, 900 N.W.2d 790 (2017).

[78] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

[79] See *E.M., supra* note 1.

[80] See 2013 Neb. Laws, L.B. 216, § 5 (as part of what was then known as Young Adult Voluntary Services and Support Act).

[81] See 2014 Neb. Laws, L.B. 853, § 34.

[82] See 2015 Neb. Laws, L.B. 243, § 17.

[83] See, 2013 Neb. Laws, L.B. 216, § 14; 2014 Neb. Laws, L.B. 853, § 44; 2015 Neb. Laws, L.B. 243, § 24.

[84] See § 1396a(a)(10)(A)(i)(IX).

In compliance with federal law, Nebraska amended its State plan and provided for former foster youth to receive Medicaid until they turned 26 years old.[85] At the time J.S. applied for Medicaid, the former foster care category existed and did not require an amendment to the State plan. J.S.' construction would effectively limit former foster care recipients of Medicaid only to those participating in B2I and reduce the age limit from 26 to 21 years. Because the state Medicaid plan already covered former foster care youth, § 43-4505(1) was not a material change in state law.

### 4. Separation of Powers

J.S. contends that DHHS' "practices and regulations limiting non-qualified aliens' ability to receive medical coverage despite their presence in B2I"[86] violates the separation of powers clause of the Nebraska Constitution.[87] Thus, she claims, DHHS has encroached on the prerogatives of the Legislature.

[19,20] Nebraska's separation of powers clause prohibits the three governmental branches from exercising the duties and prerogatives of another branch.[88] The separation of powers clause prevents a branch from delegating its own duties or prerogatives except as the constitution directs or permits.[89]

[21] But as DHHS responds, the Legislature passed § 4-108, which provides that "[n]otwithstanding any other provisions of law, unless exempted . . . pursuant to federal law, no state agency . . . shall provide public benefits to a person not lawfully present in the United States." If the Legislature intended that nonqualified aliens were to receive Medicaid, it could easily have included language to that effect in YABI. The Nebraska Supreme Court does not sit as a superlegislature to

---

[85] 477 Neb. Admin. Code, ch. 28, § 003 (2018).

[86] Brief for appellant at 24.

[87] See Neb. Const. art. II, § 1.

[88] *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011).

[89] *Id*.

- 37 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
J.S. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 20

review the wisdom of legislative acts; that restraint reflects the reluctance of the judiciary to set policy in areas constitutionally reserved to the Legislature's plenary power.[90] DHHS did not violate the separation of powers clause in denying J.S. Medicaid.

## VI. CONCLUSION

We conclude that the district court did not err in determining that J.S. was not eligible for Medicaid. We affirm the judgment of the district court.

AFFIRMED.

---

[90] *Nebraska Coalition for Ed. Equity v. Heineman*, 273 Neb. 531, 731 N.W.2d 164 (2007).